LEHMAN v. GREAT EASTERN CASUALTY & INDEMNITY CO. OF NEW YORK.

(Supreme Court, Appellate Division, Fourth Department.  June 17, 1896.)

1. ACCIDENT INSURANCE—INJURIES RECEIVED WHILE VIOLATING LAW.
     Where a railroad company permits the public to go over its tracks, at a place not a street crossing, for a sufficient length of time to create a license, a person crossing the track at such place is not guilty of "violating the law," within a clause of an accident policy exempting the insurer from lia-

bility, though Laws 1892, c. 676 (General Railroad Law) § 53, provides that no person shall walk on or along a railroad track, except where the same shall be laid across or along streets or highways.

2. SAME—VOLUNTARY EXPOSURE.

One who carelessly steps on a railroad track, without noticing an approaching train, is not guilty of "voluntary exposure" to danger, within the meaning of an accident insurance policy.

Appeal from circuit court.

Action by Marion Lehman against the Great Eastern Casualty & Indemnity Company of New York. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, made on the minutes, defendant appeals. Affirmed.

This action is brought to recover the amount of a policy of insurance upon the life of one Morris Lehman, the husband of the plaintiff. The indemnity afforded by such policy was available only upon condition that the assured should meet his death "through external, violent, and accidental means." It appears that upon the 7th day of May, 1895, he was struck by a locomotive of the New York Central & Hudson River Railroad Company, and that, in consequence of the injuries he thus received, death immediately ensued. The accident occurred in the city of Buffalo, upon what is known as the "Belt Line," which is a double-track system, running around the outskirts of the city. Upon the day in question, Lehman, presumably, was on his way to the scrap-iron and steel yard of R. L. Ginsburg & Sons, which was located east of the belt-line tracks, and south of Sycamore street, with which firm he had business relations. He had gone as far as the Sycamore street crossing in a street car, but he left this car at the crossing, and proceeded on foot, along a walk or path upon the west side of the west track, until he reached a point about 45 feet south of the south line of Sycamore street, when he observed a train coming towards him upon the east track. He waited for this train to pass, and then started to cross the west track, in the direction of the Ginsburg yard; and while in the act of turning, and before he had placed his foot upon the ·track, he was struck by the pilot beam of a locomotive going south, with the result already stated. The uncontradicted evidence discloses the fact that the railroad ties extended some 15 inches west of the west rail, and that, along the side of the track, there was a walk or path made of cinders, which was some four feet in width, and which for a number of years had been constantly used by the public as a means of ingress to and egress from the Ginsburg yard, there being no other means of reaching that yard from Sycamore street, except through a gate which was designed, primarily, for the accommodation of teams, and which was generally kept closed and locked.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

John G. Milburn and William Strauss, for appellant.
Moses Shire and Edwin L. Jellinek, for respondent.

ADAMS, J.  The policy upon which this action is brought contains the following provision, namely:

"This insurance does not cover * * * voluntary exposure to unnecessary danger; * * * nor any injury, fatal or otherwise, caused directly or indirectly (wholly or in part) * * * while violating the law."

And the defendant seeks to avail itself of this provision as a means by which to escape liability upon its contract of insurance, its contention being that the death of the assured was directly attributable to his violation of the law, as well as to a voluntary exposure upon his part to an unnecessary danger. These issues were tendered

by the answer, and they present the only questions to be considered upon this appeal, and they will be disposed of in the order in which they have been mentioned.

In support of the claim that the death of the plaintiff's husband was caused by a violation of the law, the attention of the court is directed to section 53 of the general railroad law (Laws 1892, c. 676) which provides that:

"No person other than those connected with or employed upon the railroad shall walk upon or along its track or tracks, except where the same shall be laid across or along streets or highways, in which case he shall not walk upon the track unless necessary to cross the same."

It is insisted that when Lehman left Sycamore street, and attempted to reach the Ginsburg yard, in the manner he did, he was guilty of a plain violation of this provision, which was, of itself, sufficient to defeat a recovery. It would, perhaps, be an adequate answer to this contention to suggest that, up to the time the assured met his death, he had not "walked upon or along" the railroad track. He had, to be sure, come over a walk or path running along the west side of and parallel with the tracks; but it will hardly be claimed that this, of itself, constituted any violation of the statute. It is urged, however, that, when struck, he was in the act of stepping upon the tracks, with the obvious design of crossing them, in order to reach his point of destination; and this is unquestionably true, but does this fact work any change in the situation? We think not, when considered in connection with certain other facts and circumstances concerning which there is no dispute. And, in saying this, it might even be assumed, that the endeavor to cross the track was equivalent to walking thereon. It may also be noticed in this connection that, at the point where the decedent was intending to cross, the railroad tracks were not "laid across or along" a public street or highway, but, nevertheless, it was at a place which the public had been in the habit of crossing for a long period of time; it was the customary, and, practically, the only, means people on foot had of reaching the works of Ginsburg & Sons; and its use by the public, for this purpose, had been acquiesced in by the railroad company for a sufficient length of time for such uses to ripen into a license, and the assured, therefore, had a right to avail himself of that license, and, in doing so, it cannot be said that he was violating the law. Nicholson v. Railway Co., 41 N. Y. 525; Barry v. Railroad Co., 92 N. Y. 289; Byrne v. Railroad Co., 104 N. Y. 362, 10 N. E. 539. Right here it is proper to bear in mind that the statute referred to forms no part of the criminal law of this state, and that no penalty is imposed, in express terms, for a violation thereof. It is simply one of the provisions of the general railroad act, and while, in a somewhat restricted sense, it may be said to have been induced by public considerations, it was undoubtedly designed, primarily, for the protection of the railroad companies; and therefore, when they consent to the use of their tracks by the public for the purposes of a highway crossing, it would require a somewhat strained construction of the section to hold that the people availing themselves of the privilege thus afforded became, ipso

facto, criminals.    Duncan v. Association (Super. Ct. N. Y.) 13 N. Y. Supp. 620, affirmed 129 N. Y. 622, 29 N. E. 1029.

We turn, therefore, to the second proposition advanced by the defendant, for the purpose of determining what consideration it ought to receive, and to what extent the facts of the case sustain the contention that the assured lost his life in consequence of his "voluntary exposure to unnecessary danger." And here, again, the court is relieved from the embarrassment which usually accompanies an attempt to review a case presenting conflicting statements of fact, for, most fortunately, there is no dispute as to the circumstances attending the accident, nor is there any reason to doubt that its one controlling cause was the carelessness of Lehman himself. But, with this much conceded, the important question still remains, does this act of his, careless and heedless as it undoubtedly was, relieve the defendant from the obligation of its contract of insurance? Some authorities may be found among the earlier cases for the contention that, in construing this provision of the policy, "negligence" and "voluntary exposure to unnecessary danger" must be regarded as equivalent terms. Sawtelle v. Assurance Co., 15 Blatchf. 216, Fed. Cas. No. 12,392; Hoffman v. Insurance Co. (N. Y. Sup. Ct. 1871), not officially reported, but discussed in 7 Am. Law Rev. 594. But the rule now seems to be virtually settled in most of the states that the two expressions are not necessarily nor usually synonymous. Miller v. Insurance Co., 92 Tenn. 167, 21 S. W. 39; Hull v. Association, 41 Minn. 231, 42 N. W. 936; Schneider v. Insurance Co., 24 Wis. 28; Freeman v. Insurance Co., 144 Mass. 572, 12 N. E. 372; Williams v. Association, 133 N. Y. 367, 31 N. E. 222; Id., 82 Hun, 269, 31 N. Y. Supp. 343. And the reason for this rule is stated by Allen, J., in Keene v. Association, 161 Mass. 149, 36 N. E. 891, to be that, "by taking a policy of insurance against accidents, one naturally understands that he is to be indemnified against accidents resulting in whole or in part from his own inadvertence."

We come, therefore, to the consideration of what is meant by a "voluntary exposure to unnecessary danger," and this involves a definition of the word "voluntary." As we regard it, a voluntary performance of an act must require an exercise of the will of the actor. In other words, it is an act done in obedience to, and regulated by, the will of the person who does it. It follows, therefore, that it must be done designedly, and not accidentally; and, consequently, one cannot be said to be guilty of a voluntary exposure to danger unless he intentionally and consciously assumes the risk of an obvious danger. Miller v. Insurance Co., supra; Keene v. Association, supra; Williams v. Association, 82 Hun, 269, 31 N. Y. Supp. 343, and 133 N. Y. 367, 31 N. E. 222. The case last cited furnishes a fair illustration of the distinction which we are seeking to draw, for there the assured, in a spirit of bravado, sat down upon a railroad track in front of an approaching engine, and, while so doing, was struck and killed. This was a conscious, deliberate act, and was therefore, beyond all question, one which was voluntary upon

his part. But in the case at bar the facts are quite different. Lehman had occasion to cross the tracks, in order to reach the point for which he started; and, as he was about to consummate his purpose, a train was observed by him approaching from the south, upon the easterly track. He waited until this train had passed, and then, without taking the precaution to notice the train which was coming towards him from the north, upon the track next to him, he raised his foot, and was immediately struck and killed. In this final act of Lehman's is found another and a very apt illustration of this same distinction, for, when he saw that the train was coming from the south, he became conscious of existing danger, and exerted his will in order to avoid it; but, when this particular danger had passed, he unconsciously and involuntarily exposed himself to another and a greater risk, in consequence of which his life was sacrificed. Our attention is directed to an English authority—Cornish v. Insurance Co., 23 Q. B. Div. 453—which, it is claimed, is precisely in point, and ought to be decisive of this case. The circumstances of the two cases are quite similar, it is true, but there is one very marked distinction which deprives the former of any authoritative value in our attempt to decide the latter, and that distinction lies in the difference in the language of the excepting clauses of the two policies. In the Cornish Case the policy excepted, from the risks insured against, accidents happening "by exposure of the insured to obvious risk of injury," but, in this case, only those which occur by reason of "voluntary exposure to unnecessary danger." We have attempted to show what is intended by the latter term, and, if we are correct in the views expressed, its meaning is quite different from "exposure to obvious risk." If that had been the language of the policy in suit, the defendant might with more reason claim that it was relieved from liability, for the risk or danger which confronted Lehman was an obvious one, whether he observed it or not; and by exposing himself to it, whether voluntarily or involuntarily, his case would have been brought within the letter, and possibly within the spirit, of the provision upon which the defendant relies.

These considerations lead to the conclusion that no error was committed by the trial court in its direction of a verdict in favor of the plaintiff, and that, consequently, the judgment and order appealed from should be affirmed.

Judgment and order appealed from affirmed, with costs. All concur.