CASE 53—ACTION ON AN, ACCIDENT POLICY—Nov. 20.

# Travelers' Ins. Co. v. Clark.

### APPEAL FROM M'CRACKEN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS—AFFIRMED.

ACCIDENT INSURANCE—VOLUNTARY EXPOSURE TO DANGER—INSTRUCTIONS TO JURY.

Held: 1. Where the insured, while asleep on the top of the boilers of a steamboat, was injured by steam escaping from the safety valve, there was no "voluntary exposure to unnecessary danger," within the meaning of an exception of the policy, unless insured was conscious of the danger from escaping steam, it not being sufficient to preclude him from recovering that he had been warned that it was dangerous to be on top of the boilers.

2. The court properly refused to instruct the jury that insured could not recover if "he knew, when he placed himself close to the nozzle of said safety valve, that he was in a position of danger, or could have known it by the exercise of ordinary care," as such an instruction would have authorized a verdict for defendant, though insured may have been unconscious of the danger which might arise from escaping steam.

3. It was proper to refuse instructions singling out the facts on which defendant relied to escape liability.

HENRY BURNETT, ATTORNEY FOR APPELLANT.

Nelson Clark, the insured, was employed to load railroad ties on barges on the Cumberland river. A towboat, known as the Gilchrist, was employed to tow these barges from point to point. There was a shanty-boat, provided by the employer, in which the tie men were to sleep. It was provided with bunks for that purpose. Clark and the tie men were not employes on the tow boat, nor did they have any duties to perform on the towboat,

or any business of any kind.  In March, 1897, this towboat and shanty-boat were moored at the bank about three miles below the town of Dover, in Tennessee.  On the night before the accident the shanty-boat, having become leaky, sank in about two feet of water while moored at the bank, but was pumped out and raised.  On the next night a syphon pump of four-inch diameter, with four joints of pipe, fifteen feet long each, was run all night to keep the shanty-boat from sinking again, and for that purpose a full head of steam was kept up in the two boilers on the steamer Gilchrist, the same being in charge of Mac Briant, who was watchman and foreman on the steamer. He testified without contradiction that he was familiar with the duties of fireman.  Between nine and ten o'clock on the night of the accident, decedent procured a plank about ten inches wide and of sufficient length, and laid one end of it on top of the boiler while the other end was supported by the bulk-head running parallel with the boilers, and nearer the side of the boat, and he lay down on this plank with his feet towards the boiler and went to sleep.  There was a safety valve upon each of the boilers, and the nozzle of the one on which Clark was lying was within less than a foot of Clark, and pointed directly towards him.  About ten o'clock at night the steam in the boilers rose above the Government limit, and in steamboat parlance "popped off" and scalded and burned Clark severely, from which he died in about ten days.

The evidence shows without contradiction that on the night preceding the accident Clark was lying in the same position, and in the same place as when scalded, and that he was ordered away from there by the engineer, and informed that it was dangerous for him to lie there, and was told furthermore to keep off the towboat entirely, and the same warning was given to him by others.

This policy sued on contains this provision:

Sec. 4. "This insurance does not cover  .  .  voluntary over-exertion, or exposure to unnecessary danger."

Under this state of facts there can be no recovery on the policy.

2. The instructions given by the court were such as were calculated to confuse rather than to inform and enlighten the jury.

### AUTHORITIES CITED.

Follis v. U. S. Mut. Acc. Assn., 94 Iowa, 435 (58 Am. St. Rep., 411); Tuttle v. Travelers' Ins. Co., 134 Mass., 175 (45 Am. Rep., 316); Same v. Jones, 80 Ga., 541; (12 Am. St. Rep., 270), Shaffer v. Trav. Ins. Co.; (Ill. Supreme Ct.), 22 N. E.

Travelers' Ins. Co. v. Clark.

Rep., 589; Williams v. U. S. Acc. Assn., 133 N. Y., 366; Lovell v. Ins. Co., 5 Ins. L. J., 559; Trav. Ins. Co. v. Randolph, 78 Fed. Rep., 754, 761, 762, 763; Keene v. Assn., 164 Mass., 170; (41 N. E., 203), Miller v. Ins. Co., 92 Tenn, 167 and 187; (21 S. W., 39), Willard v. Masonic Eg. Assn., Supreme Judicial Court, Mass., Oct., '97; U. S. Mut. Acc. Assn. v. Hubbell, Sup. Ct. Ohio, 47 N. E. Rep., 547.

WHEELER & WORTEN AND E. W. HINES, FOR APPELLEE.

1. The evidence shows that the shanty-boat where the tie men, including Clark, were required to sleep, was leaky and unsafe to sleep in, had sunk a night or two before, and was likely to do so again, and Clark and some others, went over on to the towboat to sleep around the boilers where it was comfortable in that season of the year, March.

2. The evidence is conflicting about Clark and others being warned not to come on or to sleep on the towboat, or that it was dangerous to sleep near the boilers.

3. The question is, was this a dangerous place, and did Clark know it when he went there.

4. Our contention is that this was an accident which was not likely to occur, and which one situated as Clark was would not reasonably have grounds to suspect it would or might happen.

5. We think the rule is very clearly established that voluntary exposure to unnecessary danger, within the meaning of an accident policy, is danger of a substantial character, known to the assured, who purposely and consciously exposed himself thereto, intending to assume the risk. U. S. Mut. Acc. Ass'n. v. Hubbell (Ohio), 40 L. R. A., 453; Fidelity, &c., v. Chambers (Va.), 40 L. R. A., 432; Cromwell v. Fraternal Acc. Assn. (N. D.), 40 L. R. A., 437; Johnson v. London Guarantee & Acc. Co. (Mich.), 40 L. R. A., 440; Hess v. Preferred Masonic Mut. Acc. Ass'n. (Mich.), 40 L. R. A., 444; Burkhart v. Trav. Ins. Co., 48 Am. R., 205; Am. State Reports, vol. 60, 154, 873 and 367.

ADDITIONAL BRIEF BY EDWARD W. HINES, FOR APPELLEE.

The defense in this case is that the insured's death resulted from "voluntary exposure to unnecessary danger," within the meaning of one of the many exceptions in the policy.

1. The answer fails to allege that the danger was obvious or manifest, or that the assured was conscious of the fact that it existed.

2. When told by the officers or crew of the boat that it was dangerous to sleep near the boilers, he doubtless realized it would be dangerous in case the boilers should explode, and he was willing to assume a risk so remote, but it does not appear that he

Travelers' Ins. Co. v. Clark.

was warned by any one, or that he had any reason to believe or fear that he was in danger of escaping steam.

3. The grounds relied on and assigned for new trial are these: 1. In refusing peremptory instruction. 2. Error in refusing instruction "y," asked by defendant. 3. That the verdict is not supported by the evidence. Neither the giving of instructions nor the action of the court in admitting or rejecting evidence is assigned as a ground for new trial. None of the new grounds assigned can be considered because none of the evidence is embodied in the bill of exceptions. The bill of evidence filed by the official stenographer is not signed by her, nor by the judge, and does not contain all the evidence; while the bill signed by the Judge is a mere skeleton, none of the evidence being embodied in it. Forest v. Crenshaw, 81 Ky., 51; L. & N. R. R. Co. v. Finley, 86 Ky., 294; Bamberger v. Kingston, 7 Rep., 360; Con. Ins. Co. v. Adams, 8 Rep., 269; Fidelity & Casualty Co. v. Chambers (Va.), 40 L. R. A., 432; Tuttle v. Trav. Ins. Co., 134 Mass., 175; Jones v. U. S. Mut. Acc. Ass'n., 92 Iowa, 652; Marx v. Trav. Ins. Co., 39 Fed. Rep., 321; 40 L. R. A., 432 and 439, and notes.

OPINION OF THE COURT BY JUDGE BURNAM—AFFIRMING.

This was an action to recover on a policy of accident insurance. The policy, among numerous other exceptions, provided, "that the insurance did not cover death or injury resulting wholly or in part from voluntary exposure to unnecessary danger." The answer alleged: "That the decedent, Nelson Clark, did voluntarily expose himself to unnecessary danger, by and on account of which he lost his life, under these circumstances: The night before he was injured he went upon the boiler deck of the steamer Jennie Gilcrist; that he was not employed in or upon said boat, and had no business on said boat at the time spoken of; that he recklessly and carelessly got upon the top of the boilers of said steamboat, laid down close to the safety pipe of said boiler, and did go to sleep; that the officers of said boat, upon discovering said Nelson Clark in this dangerous position, commanded him to leave the boat immediately

and informed him of the great danger he subjected himself to in occupying the position he did on the top of said boiler; that, in spite of said warning, said Nelson Clark, without the knowledge or consent of the officers of said steamboat, and against their warning and advice, again mounted to the top of one of the steam boilers, then filled with steam and again laid down on the top of said boiler, close to the safety valve, and went to sleep; and that he did this after being fully informed and advised of the great danger of such a proceeding on his part.

While thus lying on the top of said boiler, the steam of said boiler, being under heavy pressure, broke or exploded the safety valve on the top of the steam pipe, and thus permitted the steam to escape onto the person of said decedent, Nelson Clark, and from the effects of which he afterwards died; and that, but for negligence and recklessness on his part, the decedent would not have been hurt."

The testimony in the case shows that Nelson Clark, the insured, was employed, with a number of other laborers, to load railroad ties on barges in the Cumberland river. A steamboat known as the Jennie Gilcrist was engaged in towing the barges from point to point, and carried with her a little shanty boat provided by the employer, which was used as a sleeping place for the laborers, being fitted up with bunks for that purpose.

In the month of March, 1897, the Jennie Gilcrist and the shanty boat were moored on the bank of the Cumberland river. On the night before the accident, the shanty boat, having become leaky, sank in three feet of water before its occupants discovered the fact that it had sunk, when decedent, in company with a number of other workmen, went from the shanty boat to the steamboat, and slept on deck around and about the boilers. The next day the water was

pumped out, and the shanty boat raised, and the next night a syphon pump was run all night to keep the shanty boat from sinking again, and for this purpose steam was kept up in the two boilers of the steamer Gilcrist under the supervision of the watchman of the boat. Between nine and ten o'clock on this night the decedent laid one end of a plank upon the top of the boiler and the other upon the bulkhead running parallel with the boilers, and laid down upon this plank, with his feet towards the boilers, and went to sleep. During the night, and after he had gone to sleep, the steam in the boilers rose above the limit, and the safety valve, in steamboat parlance, "popped off," striking decedent with such force as to knock him off his plank, and inflicting upon him such severe scalds and burns as to cause his death. Davis, the engineer of the towboat, testifies that he saw decedent, the night before the accident occurred, on the top of one of the boilers, and that he told him that it was a dangerous place for him to be, and to get down, and that he did so. He also testifies that there were orders from the captain of the boat not to let the laborers remain on the towboat at night, while the witness Bryant testifies to general orders from the captain forbidding the tie men from coming on the steamboat; and to some extent these statements are corroborated by the witness Phillips, the foreman in charge of the tie men. The testimony for the defendant shows that the shanty boat was in a very dilapidated condition, and was only prevented from sinking by continual pumping, and that they slept the previous night on the towboat, and as close to the boiler as possible, on account of the inclement weather, without objection from anybody. Two separate jury trials resulted in a verdict for appellee. The first was set aside, and a new trial granted, by the circuit judge, and to reverse the judgment

rendered pursuant to the verdict of the jury upon the last trial this appeal is prosecuted.

Appellant bases its motion for a new trial upon three grounds: First, because the court erred in refusing to give a peremptory instruction at the conclusion of all the testimony; second, because the court erred in refusing to give the jury instruction "y" asked for by the defendant; third, because the verdict of the jury is not supported by the evidence or by the law of the case.

While it is alleged in the answer of appellant that the deceased had been informed by some of the officers of the boat that it was dangerous for him to be on top of the boilers, it is not averred that his attention was called to danger from escaping steam, and there is no testimony which conduces to show that the insured was conscious that he was in any danger from escaping steam, or that his attention was called to the safety valve, or to the fact that steam might escape therefrom. The mere fact that he had been told that it was dangerous for him to be on top of the boilers is not sufficient to show that he knew that there was danger from sleeping in such close proximity to the steam valve.

The testimony shows clearly that the escape of steam at the time the insured was scalded was in unusual quantities. To enable appellant to escape liability under the provision of the policy relied on, it is essential that it should show that the assured knew of and realized the danger to him in sleeping in such close proximity to the safety valve, and that with such knowledge he purposely and consciously exposed himself to such risk. In the case of Miller v. Insurance Co. (Tenn. Sup.) 21 S. W., 39, (20 L. R. A., 765), the court said: "Consciousness is necessary before there can be voluntary exposure to unnecessary danger within the

Travelers' Ins. Co. v. Clark.

meaning of the condition in an accident insurance policy against liability in case of injury from such exposure." And in Insurance Co. v. Randolph, 24 C. C. A., 305, (78 Fed., 754), the court said: "Voluntary exposure to unnecessary danger, within the meaning of an accident insurance policy against liability for injury from such exposure, refers only to dangers of a real, substantial character, which the insured recognized, and to which he nevertheless purposely and consciously exposed himself, intending at the time to assume all risks of the situation," And in Lehman v. Indemnity Co., 7 App. Div., 427, (39 N. Y. Supp. 912), the court said: "To constitute voluntary exposure to unnecessary danger within the meaning of such a condition, an act must be done designedly, and not accidentally, and must have been one done in obedience to and regulated by the will of the person who does it, and who must have intentionally and consciously assumed the risk of the obvious danger."

In Burkhard v. Insurance Co., 102 Pa. St., 263, the court said: "There is a clear distinction between a voluntary act and a voluntary exposure to danger within the meaning of such a condition in an accident insurance policy. Hidden danger may exist, and exposure thereto without knowledge of the danger does not constitute voluntary exposure to it." In the case of Insurance Co. v. Randolph, 24 C. C. A., 305, (78 Fed., 754), Justice Harlan used this language: "What do the words 'voluntary exposure to unnecessary danger,' in the contracts in suit, import? The words 'voluntary exposure to unnecessary danger,' literally interpreted, would embrace every exposure of the insured not actually required by the circumstances of his situation, or enforced by the superior will of others, as well as every danger attending such an exposure if it might have been avoided by the exercise of ordinary care and diligence on

his part. But the same words may be fairly interpreted as referring to dangers of a really substantial character, which the insured recognized, but to which he nevertheless purposely and consciously exposed himself, intending at the time to assume the risks of the situation. The latter is most favorable to the insured, does no violence to the words used, is consistent with the object of accident insurance contracts, and is, therefore, the interpretation which the court should adopt." In the light of these opinions the court did not err in overruling appellant's motion for a peremptory instruction, and as the burden of proof was upon appellant, the question was properly submitted to the jury.

Appellant complains that the court erred in refusing to give instruction "y," which is as follows: "The court say to the jury that if they believe from the evidence that the decedent, Nelson Clark, just before he was injured, lay down on a plank, one end of which rested on the boiler of the steamboat Gilcrist, and went to sleep on said plank while the boiler was filled with steam, and that in the position he occupied he was directly in line of or under the safety valve which was on said boiler, and that while he was asleep he was injured by the escape of steam from said safety valve, then plaintiff can not recover in this action if the jury shall believe that the position in which the defendant placed himself was a dangerous position, and that he voluntarily placed himself in said position, and that he knew, when he placed himself close to the nozzle of said safety valve, that he was in a position of danger, or that he could have known it by the exercise of ordinary care."

This instruction is objectionable, because it authorized the jury to find for the defendant even though insured may have been entirely unconscious of the danger to him which

might arise from steam escaping from the safety valve. It is also objectionable as it singles out the facts on which appellant relies to escape liability. We think the instructions given to the jury fairly state the law of the case, and are in accordance with the law as laid down by the text writers and the decisions of the appellate courts of other States in construing the exceptions relied on in accident insurance policies.

For the reasons indicated, the judgment is affirmed.