EMMA PAYNE, Appellee, v. FRATERNAL ACCIDENT ASSOCIATION OF AMERICA, Appellant.

Action to Recover on Accident Policy:  ACCIDENT DEFINED.   An
1    accident within the meaning of a policy of insurance which provides that the injury must occur "through external, violent and accidental means," is a result, the inducing cause for which was not put in motion by the voluntary and unintentional act of the person injured.

Voluntary Exposure to Unnecessary Danger:  JURY QUESTION:
2    When an accident policy provides that it does not include an injury or death resulting from voluntary exposure to unnecessary danger, and the evidence is such that the conclusion may be reached that there was not such an exposure, it then becomes a question of fact for the jury.

Same:  EVIDENCE.   Evidence considered and held that the facts
3    surrounding the death of deceased were such that reasonable minds might reach different conclusions on the question of voluntary exposure to danger, and that it was properly submitted to the jury.

Accidental Death While Crossing Railroad: RECOVERY FOR:  A
4   provision in an accident policy that the same will not cover
    death or disability while on a railroad bridge or roadbed does
    not preclude recovery for the accidental death of the insured
    while crossing a railroad track at an accustomed place, and
    want of proper care by the insured is a question for the jury.

*Appeal from Dallas District Court.*—HON. J. H. APPLE-
GATE, Judge.

SATURDAY, JANUARY 31, 1903.

PLAINTIFF is the widow of Joe D. Payne, and the bene-
ficiary named in an "accident certificate," so called, is-
sued by the defendant association to said Joe D. Payne
during his lifetime.   One of the provisions of such certifi-
cate is that in case of the death of the holder by accidental
cause the association will pay to the beneficiary named the
sum of $2,000.   This action is brought upon said certificate
to recover said sum, it being alleged that said Payne came
to his death by accidental cause, within the meaning
thereof.   There was trial to a jury, and verdict and judg-
ment in favor of plaintiff.   Defendant appeals.—*Affirmed.*

*Sullivan & Sullivan* for appellant.

*White & Clarke* for appellee.

BISHOP, C. J.—The certificate holder resided in Dallas
county, this state.   It seems that in February, 1900, he had
gone for a visit to Fenton, Louisiana, and while there he was
1. ACCIDENT    killed by being struck and run over by a
within the
meaning of   freight car moving upon a railroad   track.
insurance pol-
icy defined.   One of the defenses relied upon to defeat a
recovery is that the death of Payne was not accidental, as
defined by the contract in suit.   It is the language of the
certificate that the injury must occur "through external,
violent, and accidental means."   It is conceded that the
burden was on the plaintiff to show that the death of

Payne was the result of an accident within the meaning of the certificate. As we have stated, he was killed by being struck and run over by a railroad freight car. Necessarily, he must have been on or near the track over which such car was moving at the time he was so struck. Now, under such circumstances it seems to us to be conclusive that death was either the result of an accident, or it was premeditated, and therefore suicidal.

Counsel for appellant do not suggest that the facts disclosed by the record indicate in any degree a case of suicide, or that the jury would have been warranted in finding such to be the fact. Their contention seems to be that, because the deceased placed himself in a position to receive the injury resulting in his death, it was not, therefore, an accident. We are unable to grasp the force of the contention. An accident, in the sense we are here called upon to consider the expression, means a result the inducing cause for which was not put in motion by the voluntary and intentional act of the person injured. It does not matter in this connection that negligence even may be made to appear. If involuntary and uninten tional, the result cannot be characterized otherwise than as an accident. *Follis v. Association*, 94 Iowa, 439; *Matthes v. Association*, 110 Iowa, 224; *Marx v. Insurance Co.*, (C. C.) 39 Fed. Rep. 321. The case of *Carnes v. Asssociation*, 106 Iowa, 281, relied upon by counsel, does not sustain their contention. In that case death was the result of an overdose of morphine, self administered, and the question was whether the death could be regarded as an accident, it appearing not only that the taking of the drug was voluntary, but that the amount taken was intentional. It is manifest that to such a case must be applied a principle altogether different from that governing the one before us. Here the contact with the car which killed him was an involuntary and unintentional act on the part of Payne. It may be as asserted by counsel that the killing was the

logical result of the position in which the deceased had negligently placed himself, but, nevertheless, design or purpose being wanting, it was accidental, and, as we think, clearly within the meaning of the certificate.

II.   It is a provision of the certificate that "this insurance does not cover  *  *  * accident nor death or disability resulting wholly or partly, directly or indirectly from

2. VOLUNTARY exposure to unnecessary danger: jury question.  *  *  * voluntary exposure to unnecessary danger." By motion to direct a verdict at the close of the evidence for plaintiff, and again in the motion for new trial, the defendant urged that there could be no recovery, in that the undisputed facts make it appear that the injury complained of was wholly and directly the result of a voluntary exposure to unnecessary danger.   The fact of accident having been established, the burden of proof was upon the defendant to show that Payne came to his death because of his voluntary exposure to unnecessary danger.    *Follis. v. Association*, 94 Iowa, 439.   It may be conceded that the facts are not seriously involved in dispute; still if, from such facts, reasonable minds might reach different conclusions as to the ultimate fact, the question was one for the jury.   *Whitsett v. Railway Co.*, 67 Iowa, 159; *Winelander v. Jones*, 77 Iowa, 401. And in such cases it follows as a matter of course that the party having the burden of proof cannot be heard on appeal to complain of an adverse verdict, it appearing that the question was fairly submitted for the consideration of the jury.

Now, the principle of law under which an exception, such as found in the certificate in the case at bar, must be construed, is clearly stated in the opinion of this court in *Follis v. Association, supra.*   Deemer, J., speaking for the court, says: "It evidently means something more than contributory negligence or the want of ordinary care on the part of the assured.   The policy was no doubt intended to cover accidents, although the assured may

have been guilty of negligence which proximately con-
tributed to his injury.   To render one guilty of a volun-
tary exposure to danger, he must have intentionally done
some act which reasonable and ordinary prudence would
pronounce dangerous."   See, also, the following cases:
*Jones v. Association*, 92 Iowa, 64; *Sutherland v. Insur-
ance Co.*, 87 Iowa, 505; *Smith v. Insurance Co.*, 115 Iowa,
217; *Insurance Co. v. Osborn*, 90 Ala. 201 (9 South.
Rep. 869, 13 L. R. A. 267).   In the case last cited it is
said: "The approach to an unknown and unexpected
danger does not make the act a voluntary exposure thereto.
The result of the act does not necessarily determine the
motive which prompted the action.   The act may be
voluntary, yet the exposure involuntary."   The same
thought finds expression in *Carnes v. Association, supra.*

In the case before us the trial court submitted the
question of fact to the jury under instructions which, as
we think, correctly embody the principles of law applic-
able to such question as above referred to and set forth.
Such being true, there remains for our consideration but
one proposition, and that is whether the proven facts
disclosed by the record are such as that the ultimate fact
should have been submitted for a finding of the jury; or,
on the other hand, determined by the court as a matter of
law.   The facts, in brief, are as follows:  Fenton is a
small town of less than a dozen buildings.   The railroad
runs through the town north and south, with a side track
on the west, and about forty feet distant from
the main track.   Two streets cross the tracks
at right angles, and are about three hundred feet distant
from each other.  The depot is between the tracks, and abuts
upon the street at the south.   Also between the tracks,
about forty feet north of the depot, is a large water tank.
To the north of the tank is a pump house, and still further
north a privy.   At the time in question a large pile of
wood was situated along the east line of the side track,

3. SAME: evi-
dence.

and between the pump house and privy.   The Hawkeye
Rice Mills are situated on the west side of the side track,
and abut upon the street at the north.   A short distance
to the south of the mills is a small warehouse.   On the
morning in question there was standing on the side track,
near the warehouse, an empty box car.   Otherwise than
as above stated, the grounds on both sides of the tracks
were open and vacant.   It appears in evidence that for a
long time the usual and customary way of travel for
pedestrians going and coming from the rice mills and the
northern part of town to the depot was in a somewhat
diagonal direction from the rice mills, passing to the west
and south of the warehouse, thence crossing the side track
south of the wood pile and about opposite the water tank
or pump house, and thence to the north end of the depot.
It was misty on the morning of the accident, and the wind
was blowing hard from the south.   Payne had gone from
the rice mills to the depot, presumably for the purpose of
buying a newspaper.   While there a freight train came in
from the south, which was soon afterwards followed by a
passenger train from the same direction.   The freight
train pulled on to the north, permitting the passenger
train to come to the depot, but, instead of leaving for the
next station, it simply passed over the north switch, and
then proceeded to back in upon the side track.   Payne
bought a newspaper of the train news agent, and then turn-
ed to go back to the rice mills, following, as near as can be
told, the usual route.   It appears that the moment before
the accident he was looking at his newspaper, and there is
nothing in the evidence to indicate that he was conscious
of the fact that the freight train was backing in from the
north.   While he was upon the side track, and immediately
south of the empty car referred to, the backing train
struck such car, which in turn struck him, resulting in his
being thrown down, run over, and instantly killed.   It is
contended by appellant that at the time he was struck

Payne was walking north between the rails of the side of the side track. The only evidence tending to so prove was that of the fireman of the passenger engine, who says that from his engine he saw Payne as he emerged from behind the water tank, and just a moment before he was struck; that he was then facing north, and looking at his paper; that he saw him take one or two steps to the north before being struck. From the other evidence in the case it is clear that Payne started back from the depot along the accustomed route, and he was struck at about the point where such route crosses the side track. The evidence does not disclose the direction of the path as it crosses the track, but it does appear that the general direction thereof was north-northwest. Such are the material facts to be considered in this connection. Therefrom it is quite evident to us that at least reasonable minds might reach different conclusions as to whether Payne had "intentionally done some act which reasonable and ordinary prudence would pronounce dangerous." We conclude that there was no error as complained of in the rulings of the trial court.

III. It is a further provison of the certificate that "this insurance does not cover * * * accident nor death or disability resulting * * * while walking or being **4. ACCIDENTAL** on a railway bridge, roadbed, or location, **death while crossing rail-** * * * violating laws or rules of a corpora-**road: recovery for: want** tion." As we have seen, the evidence shows **of proper care.** without dispute that at the time of his accident Payne was on the roadbed, and between the track rails of a railway. In the motion for a directed verdict, and again in the motion for new trial, the defendant contended that such conduct on the part of Payne was violative of the certificate conditions, and that, consequently, the plaintiff ought not to be permitted to recover. If there was any law or rule of the railway corporation having reference to the crossing of its tracks, the record does not disclose the same. With respect to such it has

been held that it must be shown that the rule was one which was known to the policy holder, and in force at the time of its alleged violation. *Marx v. Insurance Co.* (C. C.) 39 Fed. Rep. 321. The contention of defendant might perhaps be thus disposed of, but we do not think it necessary to rest our judgment on that ground alone. If a literal construction is to be given the language of the certificate, then it follows as a matter of course that a recovery must be denied. Such, however, is not dictated by reason, or in harmony with the authorities.

In Joyce, Insurance, section 2625, it is said: "The phrase, 'walking or being on a railway bridge or roadbed,' under an exception in an accident policy of liability for injuries or death caused thereby, is not to be construed with absolute literalness. The condition is a warranty by the assured that he will not intrude upon that part of the roadbed which is not also a part of the highway or public thoroughfare; that he will not loiter upon the track; but does not obligate him not to cross the railroad bed at the place provided for the public to cross it. And if one crosses a track at a station, where the public is accustomed to cross, he is not 'walking on a railroad bed' in any such sense as will entitle the insurer to avoid the policy, irrespective of proof of such person's negligence in so crossing."

The cases bearing upon the question are very fully collected in 1 Am. & Eng. Enc. Law (2d Ed.) 311, and it is there said: "In an action upon a policy of accident insurance, which provided that the insurance company shall not be liable if the insured was injured or killed while upon a railroad bridge, trestle, or roadbed, it is not error for the court to charge that, if the insured was crossing a railroad at a well recognized crossing which had long been publicly used, and that he used proper care under the circumstances, and was killed, the mere fact that he was crossing the track would not prevent a recovery." The

rule thus announced appeals to us as being just and salutary, and we do not hesitate to accept it. Coming to the application of such rule to the case before us, and it appears that there was evidence from which the jury might find, and did find, that the way being traveled by Payne had long been publicly used, and was well recognized as a thoroughfare to and from the railroad depot. That it was not, in a legal sense, a regularly laid out or established way, is immaterial. Railroad tracks are common everywhere, in urban as well as suburban and rural districts, and they must be very frequently crossed and recrossed in the ebb and flow of business and social life. A rule that would require of a pedestrian about to follow a well worn way or beaten path over a railroad track to stop and satisfy himself, before proceeding, of his strict legal right so to do, at the peril of forfeiting his insurance, would amount to an absurdity.

It is to be observed, however, that an inherent part of the rule we are now considering requires the exercise of proper care upon the part of the insured. Hence, if it can be said to appear from the record in this case as a matter of law that Payne was not in the exercise of proper care, then it would be the duty of the court to say that no recovery can be had. Now, whether or not proper care was exercised in a given case is a question of fact involving all the circumstances appearing in evidence, and such question, generally speaking, is one for the jury. If the evidence be such as that by reference to it the finding of the jury can be justified, the verdict becomes conclusive. Grouping the facts, and we have the standing car on the side track to the rear of or around which Payne passed on his way to the depot; the presence of such standing car as he approached it on his return; the intervening buildings and wood pile that obstructed the vision to the north, and the strong south wind that interfered with hearing sounds from the north; the fact that the station was a small one,

at which but little railroad business was done; that the freight train had apparently gone on to the north; the facts concerning the pathway leading across the side track to the south of the standing car; that as Payne was on the track the standing car was suddenly struck by the backing train, and before he could escape such car was upon him. These facts were all before the jury, and therefrom it became the duty of the jury to say whether the fact that Payne was on or close to the track, and that he was looking at a newspaper the moment before he was struck, amounted to a want of proper care. It is to be borne in mind that in such cases a different rule obtains from that which would have application were this a case against the railroad company. There any want of care being shown would defeat a recovery. Here only such care as persons are accustomed habitually to use is required, and the right to recover is not foreclosed because it may appear that the injured person in some degree, not amounting to an absolute want of ordinary care, contributed to his injury. 1 Am. & Eng. Enc. Law (2d Ed.) 310.

Turning to the instructions given to the jury, and we find that the subject was fully and fairly presented for consideration. The verdict, of course, negatives the idea of a want of proper care. Now, having in mind that exceptions of the character appearing in the certificate involved in this action, and for obvious reasons, are construed most strongly against the insurer, and that the burden is upon such insurer to furnish the proof to bring the case within the exception, we cannot say that there is no basis in the evidence upon which the verdict of the jury can be justified. What we have already said disposes of the principal contentions in the case. We have examined each of the remaining assignments of error, and find nothing therein demanding especial notice.

We conclude that the case was fairly tried, and the judgment is AFFIRMED.