TRAVELERS' INS. CO. v. HARRIS.†
(No. 1432.)

(Court of Civil Appeals of Texas. Texarkana. May 28, 1915. Rehearing Denied June 10, 1915.)

1. INSURANCE ☞646—ACCIDENT INSURANCE —DEFENSES—BURDEN OF PROOF.
    Where an accident policy provided that it should not cover certain injuries, the insurer has, where plaintiff's pleading and proof did not show that an injury resulted from an excepted cause, the burden of proving that the accident came within the exceptions.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1645–1668; Dec. Dig. ☞ 646.]

2. INSURANCE ☞665—ACCIDENT POLICIES— ACTIONS—EVIDENCE.
    In an action on an accident policy, evidence held not to show that insured was killed while attempting to enter a moving train, injuries from which cause were excepted.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. ☞ 665.]

3. INSURANCE ☞451 — ACCIDENT POLICIES— CONSTRUCTION.
    Where an accident policy excepted injuries happening while on a railway grade or roadbed, the policy, which applied while insured was riding on trains, does not except accidents resulting in injuries while insured was necessarily on a railway roadbed to enter a train, but only where insured voluntarily, without cause, entered such place of danger.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1171, 1172; Dec. Dig. ☞451.]

4. INSURANCE ☞451—ACCIDENT POLICIES— DEFENSES.
    Insured, who was attempting to board a train about to depart, was on the opposite side from the station, and tried to attract the attention of the porter and get him to open the vestibule door. In some way insured was thrown under the train and killed. The policy excepted accidents resulting from trying to enter a moving conveyance or happening while on a railway roadbed. Held, that insured was not unnecessarily on the roadbed, within the policy.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1171, 1172; Dec. Dig. ☞451.]

5. APPEAL AND ERROR ☞1062 — REVIEW — HARMLESS ERROR.
    The submission of an issue of defense not raised by the evidence is harmless to defendant.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. ☞ 1062.]

6. INSURANCE ☞461 — ACCIDENT POLICIES— DEFENSES.
    Where an accident policy excepted injuries resulting from voluntary exposure to unnecessary danger or from an attempt to enter a moving train, recovery cannot be denied on the ground of exposure to unnecessary danger, unless insured, who was killed by a train, knew the danger of attempting to attract the attention of the porter and get him to open the vestibule so insured could enter.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1180, 1181; Dec. Dig. ☞461.]

7. INSURANCE ☞147 — CONTRACTS — ATTORNEY'S FEE.
    Though a contract of accident insurance was made in a foreign state, the statute of the forum providing for the recovery of damages and attorney's fees governs an action thereon.
    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 293; Dec. Dig. ☞147.]

Error from District Court, Gregg County; W. C. Buford, Judge.

Action by Sallie Lou Harris against the Travelers' Insurance Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Thompson, Knight, Baker & Harris and Geo. S. Wright, all of Dallas, and McCord & Campbell, of Longview, for plaintiff in error. Lacy & Bramlette and Young & Stinchcomb, all of Longview, for defendant in error.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

HODGES, J. On December 9, 1913, the defendant in error, Sallie Lou Harris, filed this suit in the court below against the plaintiff in error, to recover the sum of $15,940. The action was upon an accident policy theretofore issued by the plaintiff in error to her husband, Geo. V. Harris, in which the defendant in error was named as the beneficiary. It was alleged that Harris died July 9, 1912, as the result of injuries inflicted by a railroad train in the city of Longview, Tex. The plaintiff in error answered by general demurrer and special exceptions to the claim for damages and attorney's fees, and specifically denied each of the allegations of the policy, except such as were expressly admitted. In its answer the plaintiff in error claimed that, at the time Harris was injured, he was attempting to board a moving train using steam as a motive power, and was injured while at a place not intended for passengers; that the injury was due to a voluntary exposure to unnecessary danger, from voluntary overexertion; and that the injury was received at a time when Harris was upon the roadbed of a railroad. The provisions of the policy which exempted the plaintiff in error from liability for injuries occurring under the conditions mentioned were specially pleaded. A trial before a jury resulted in a verdict and judgment in favor of the defendant in error for the sum of $6,000 as the sum due upon the policy, $720 as damages, and $1,000 as reasonable attorney's fees.

The group of assigned errors first presented complains of the refusal of the court to give peremptory instructions in favor of the plaintiff in error. There appears to be practically no conflict in the evidence as to the conditions under which the accident occurred. The testimony shows that on the night of July 9, 1912, Geo. V. Harris was at the railroad depot in the city of Longview, Tex., and was expecting to go to Dallas on the Texas & Pacific train, which left shortly after midnight. Previous to the departure of the train (just how long does not appear) he went across the railroad yards to the north side to a restaurant, where he purchased a glass of milk and some other articles. He walked out of the restaurant while the train was at the station, and the bell was ringing, indicating that it was about to depart. Harris walked in the direction of the train. He had to travel about 180 feet in order to reach the train. Immediately after the train departed, he was found sitting on the ground, within a few feet of the north rail of the track upon which the train had been standing, with one of his legs cut off between the ankle joint and the knee. He died shortly afterwards from the effects of that injury. Proof of loss was presented, and payment demanded, but refused upon the grounds set out in the plaintiff in error's answer. The only direct evidence as to what Harris did after leaving the restaurant, and how he happened to be injured, is to be gathered from the statements made by him shortly afterwards to those who came to his assistance. One of the witnesses testified that they carried Harris into the express office, where he stated that he received the injury while trying to attract the attention of the porter, who was standing in the vestibule of the car, in order to get him to open the door so that he (Harris) might get on. He stated that at the time Harris appeared to be very much excited, or badly frightened and confused. He would not converse on any one subject any length of time, and his talk was disconnected. Another witness testified that Harris gave this account of the accident. He was running to catch the train, and slipped and fell. He had been over to the restaurant to get something to eat. A third witness testified: That Harris stated he had been over to the hotel, went to the depot, and asked some one about the train, and was told when it would probably be there. That he thought he had time enough to go across the track to a restaurant, and started over there. He got a piece of gum and a glass of milk, and started out of the door, and when he got outside he heard the bell ringing, and looked up and saw the train fixing to pull out. That he ran over there to try to catch the train, and slipped and fell, and his leg was cut off. That Harris also stated that he could see the porter and some people on the train, and he tried to attract some one's attention. This witness did not undertake to give Harris' exact words, but admitted that he could only repeat the substance of what was said. A fourth witness testified that, after going to Harris, some one in the crowd asked how the accident happened, and Harris said he had been over to the junction to get some gum, and as he came out the train was pulling up, and he saw it had him headed off before he could get around it, and he made for the north side and ran down and tried to catch, missed his handhold, and his foot slipped over the rail. Harris also said he could see the porter standing up in the door, and his intention was to attract the porter's attention and get him to open the door so he could get on and not miss the train. Other witnesses testified to substantially the same statements as having been made by Harris upon that occasion. Several witnesses stated that Harris spoke of having a lame leg. The testimony further showed that the train which caused the injury consisted of four or five cars, the passenger coaches having vestibuled doors, and that those doors were usually kept closed on the north side at Longview station, the south being the side provided for passengers to get on and off. Harris was 51 years of age, was 5 feet 7 inches high, and weighed about 175 pounds. The defendant in error offered evidence to show that he was a man of prudent and careful habits.

[1] It is contended that, in view of this evidence, the defendant in error was not en-

titled to recover, because it conclusively appears that the accident resulted from conduct on the part of Harris and under conditions which exempted the insurance company from liability. The policy of insurance contained the following provisions, upon which that defense is based: Under the head of "Provided," and in the last subdivision, the following language is used:

"This insurance shall not cover disappearance or suicide, sane or insane, or injuries of which there is no visible mark, etc.; * * * nor shall it cover accidents, injuries, death, loss of limb or sight, or disability, resulting wholly or partly, directly or indirectly, from intoxication, * * * from voluntary exposure to unnecessary danger; * * * nor (except as incident to the occupation of railway employés insured as such) shall this insurance cover accidents, injuries, death, loss of limb or sight, or disability, resulting directly or indirectly from entering or trying to enter or leave a moving conveyance using steam as a motive power (except cable and electric street cars), or happening while being in any part thereof not provided for occupation by passengers or while being on a railway bridge or roadbed."

As preliminary to the discussion of the defense here presented, it is proper, and perhaps essential, to first determine upon whom rested the burden of showing the particular cause of the accident. The plaintiff in error contends that the clauses of the policy referred to above being exceptions to the general risk assumed, but parts of the contract of insurance, it devolved upon the defendant in error to not only prove an accidental death or injury, but to also show one which was not within the terms of the exceptions; that this was essential to the establishment of a cause of action upon the policy. The trial court took the opposite view of the law, and framed his charge upon the assumption that a prima facie case having been made by showing a death from an accident within the general terms of the policy, and imposed upon the plaintiff in error the duty of showing that the accident resulted from conditions or causes embraced within the exceptions. The plaintiff in error refers to the case of Pelican Insurance Co. v. Troy Association, 77 Tex. 225, 13 S. W. 980, as supporting its contention. That case was a suit upon a fire insurance policy, which contained exceptions couched in terms very similar to those embraced in this policy. After quoting those exceptions, Judge Stayton held that, in order to show a cause of action, it was necessary for the plaintiff to prove facts which affirmatively showed an accident not within the terms of the exceptions. In other words, he held that it was necessary for the plaintiff to show that the fire did not occur from one of the excepted causes. In the recent case of Ginners Mutual Underwriters v. Wiley & House, 147 S. W. 629, that case and also one of a later date, which followed it, are referred to and discussed in an opinion by Justice Higgins of the El Paso court. A large number of cases holding a contrary view are there collected and followed as announcing the better rule in such controversies. In view of these last-mentioned rulings, as well as upon principle, we think the holding of the trial court in this instance should be sustained. This, however, should be subject to the qualification that where, in his pleadings or his proof, the plaintiff presents facts which tend to show an injury resulting from one or more of the excepted causes, he should be required to rebut the inference to be drawn from such facts, and show that the injury did not in fact result from one of the excepted causes.

[2] Returning to the consideration of the grounds urged as calling for the peremptory instruction, we shall consider them in the order previously stated:

First, Did the evidence show, as a matter of law, that Harris was injured while entering or trying to enter a moving train? The testimony before referred to shows that he approached the train on the north side, opposite to where the doors had been opened for the use of passengers. His purpose, manifestly, was to get on that train. The evidence indicates that he could not do that because the doors of the vestibules were closed. Harris accounts for the accident by saying that his foot slipped, or that he stepped over the rail; and presumably the injury resulted from a wheel of the car running over his leg. Whether he was then trying to get on the train while it was in motion, or was merely endeavoring to attract the attention of the porter with a view of having the latter stop the train, or of having him open the door so that Harris could enter while the train was still in motion, were matters of fact for the jury to determine. If Harris was only trying to attract the attention of the porter and was making no effort to board the train, even though he had caught the handhold of the car, it could not be said, as a matter of law, that he was within the terms of the exception which exempts the plaintiff in error when the injured party is at the time entering or trying to enter a moving train. Hence we conclude that the demand for a peremptory instruction based upon that ground was correctly refused.

[3] The next question is: Was Harris injured while being on a railway roadbed? If the terms of this exception are to be given a literal construction and application, then the plaintiff in error's contention should be sustained, for it conclusively appears that Harris was injured while physically on the roadbed. But to say that a railway roadbed is to be considered a zone to which the policy does not apply, regardless of the character or cause of the accidental injury which occurs there, would lead to such absurd consequences that it cannot be assumed the parties had any such construction in mind at the time the contract was made. Evidently the purpose of this exception to the general terms of the policy was to exempt the insur-

ance company from liability for injuries resulting from the perils peculiar to the operation of trains, such as collisions with cars. Osgood v. Insurance, 76 N. H. 475, 84 Atl. 50, Ann. Cas. 1913C, 425; Burkhard v. Insurance Co., 102 Pa. 262, 48 Am. Rep. 205. It may be replied, however, that Harris was injured as a result of an exposure to one of those peculiar perils; that he was in fact struck by a passing train. But to make that fact alone the controlling test of liability would produce consequences no less clearly beyond the contemplation of the parties. To say that a person, regardless of other conditions, who is struck by a moving train, can claim none of the benefits of insurance under a policy like that involved in this suit, would ignore the plain purposes for which the insurance was secured. If the construction insisted upon be adopted, a person who happens to be upon a railroad track, or within the danger limit, whether by accident or by force of conditions over which he has no control, would not be covered by the terms of the policy. The language of the policy does not indicate that the insurance company undertook to exempt itself from accidents of that particular class. Had any such purpose existed, it might easily have been made clear by a provision in the policy so stating. The fact that no such explicit language was used may be taken as evidence that no such intention existed. We think the more reasonable construction, and the one which must have been contemplated by the parties, is that, to come within the meaning of the exception, it must appear that the injured party voluntarily and unnecessarily or carelessly placed himself in a position to be injured by some one or more of the perils peculiar to being on a railway roadbed. This construction is also supported by several precedents. Payne v. Fraternal Accident Assurance Co., 119 Iowa, 342, 93 N. W. 361; McClure v. Great Western Accident Ass'n, 141 Iowa, 350, 118 N. W. 269; Equitable Accident Ins. Co. v. Osborn, 90 Ala. 201, 9 South. 869, 13 L. R. A. 267; De Loy v. Travelers' Ins. Co., 171 Pa. 1, 32 Atl. 1108, 50 Am. St. Rep. 787; Meadows v. Pacific Mutual Life Ins. Co., 129 Mo. 76, 31 S. W. 578, 50 Am. St. Rep. 427.

[4] We come, then, to the question, Was Harris unnecessarily and voluntarily upon the roadbed when injured? It follows from what has been said that the roadbed, within the meaning of the policy, is not coextensive with the right of way, or even with the embankment upon which the ties and rails rested, but includes only that portion that was within the sphere of danger. Harris had purchased a ticket and went to the train for the purpose of taking passage. He slipped and accidentally fell within the sphere of danger. He was not, therefore, voluntarily upon the roadbed, within the meaning of the exception. His ticket entitling him to passage authorized and required him to approach the train and get in close proximity to it. He was not, therefore, unnecessarily upon the roadbed. The court did not err in refusing the peremptory instruction upon that ground.

We cannot say, as a matter of law, that Harris voluntarily exposed himself to an unnecessary danger. Just what his position was immediately prior to the accident is a matter of inference from which a jury might draw different conclusions.

[5] Complaint is made of the action of the court in giving a charge on the issue of overexertion as a cause of the accident. The error, if any, was harmless, because the facts did not justify the submission of any such issue to the jury.

[6] It is also contended that the court erred in giving the following charge explanatory of what it took to constitute a voluntary exposure to an unnecessary danger:

"You are instructed that, before you can find for the defendant on the ground that the deceased received his accident as a result of his voluntary exposure to unnecessary danger, you must find, by a preponderance of the evidence, that the deceased, at the time of the accident, voluntarily exposed himself to unnecessary danger, and that his injury and death resulted therefrom, and, if you fail to so find, you will not find for the defendant on this issue. And in this connection you are further instructed that it is not sufficient for the defendant to show that the deceased was guilty of a want of ordinary care or a lack of prudence, but it is necessary to show that the deceased went into the danger and received his injury as a result thereof, and that while going into the danger, if any, the deceased had knowledge of the particular danger and cause to apprehend it, and that he went into the danger, if any, with the intention to expose himself to it, and that he received his injury as a result thereof, and a failure to so show by a preponderance of the evidence would not entitle the defendant to a verdict on this issue."

There were various general objections made to this charge, among which are: It was on the weight of the evidence and not authorized by the pleadings or the evidence. It is specifically stated as an objection that it required that the deceased should have had knowledge of the particular danger, and cause to apprehend it, and that he went into it with the intention of exposing himself. We think the rule there stated is supported by the general trend of the authorities. Continental Casualty Co. v. Deeg (Civ. App.) 125 S. W. 353; Whalen v. Peerless Casualty Co., 75 N. H. 297, 73 Atl. 642, 139 Am. St. Rep. 695; Beard v. Indemnity Ins. Co., 65 W. Va. 283, 64 S. E. 119; Travelers' Ins. Co. v. Clark, 109 Ky. 350, 59 S. W. 7, 95 Am. St. Rep. 374.

[7] It is further contended that this policy of insurance was an Oklahoma contract, and that our statute providing for the recovery of damages and attorney's fees has no application. That question appears to have been settled adversely to the contention of the plaintiff in error in Franklin Ins. Co. v. Villeneuve, 25 Tex. Civ. App. 356, 60 S. W. 1048;

Id., 29 Tex. Civ. App. 128, 68 S. W. 203. The last citation is the second appeal in that case, in which the same question appears to have been raised regarding the right to collect damages and attorney's fees in suits upon insurance policies executed in other jurisdictions. The Supreme Court refused a writ of error, and we take this as an approval of the doctrine there laid down by the Court of Civil Appeals.

The judgment of the district court is affirmed.