(56 Misc. Rep. 529.)

### NORWOOD v. PREFERRED ACC. INS. CO. OF NEW YORK.

(Supreme Court, Appellate Term. November 29, 1907.)

INSURANCE—ACCIDENT INSURANCE—ACTIONS—RECOVERY.

    In an action on an accident policy, evidence examined, and *held* to authorize a recovery.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 1702–1728.]

Appeal from City Court of New York, Trial Term.

Action by Herbert E. Norwood against the Preferred Accident Insurance Company of New York. From an order of the City Court of the city of New York setting aside a verdict for plaintiff and dismissing the complaint, and from a judgment entered thereon, plaintiff appeals. Reversed, and verdict reinstated.

Argued before GILDERSLEEVE, P. J., and LEVENTRITT and ERLANGER, JJ.

Williams & Caldwell (Charles Caldwell, of counsel), for appellant. Jacob Fromme, for respondent.

ERLANGER, J. On the 15th of May, 1894, the defendant issued to the plaintiff a certain policy of insurance, whereby it insured the plaintiff against the effects of bodily injury, and whereby, among other things, it agreed to pay to the plaintiff, in case the bodily injury resulted in the entire loss of one foot at or above the ankle, the sum of $1,000. The policy was subject to certain conditions. It provided that in the case of accidental injury notice should be given, with full particulars, within ten days from the date of such injury, and, in the event of the failure to give such notice within said time, all claims under the policy were to be invalidated. It also provided that:

"No legal proceedings for a recovery hereunder shall be brought within three months after the receipt of such proofs at the home office of the said company, nor be brought at all unless begun within six months from the date when the said company shall have received such proofs. The application for the policy and the classification of risks by the company are made a part of this contract. Fraud or concealment in obtaining this policy, or any attempt by like means to obtain indemnity, shall render the policy and all insurance hereunder absolutely void."

And, finally, it provided that there should be no liability on the part of the defendant from any accident resulting from "unnecessary exposure to danger" or "voluntary exposure to obvious risk of injury."

On the 11th day of February, 1902, plaintiff was injured while in the act of, or immediately after, alighting from a railroad train, which resulted in the loss of his right foot above the ankle. Within ten days thereafter notice of said accident was given. On January 5, 1903, this action was brought to recover the amount of the policy. The defendant by its answer seeks to avoid liability upon the ground that the action was not brought within six months from the date when the defendant received proofs of injury; that the accident occurred through plaintiff voluntarily or unnecessarily exposing himself to

danger, or to obvious risks of injury; and that the plaintiff forfeited his right to recover under the policy by a misstatement in the proof of injury as to the manner in which the accident occurred. When plaintiff rested, the defendant moved to dismiss the complaint upon these three grounds. The trial court denied the motion, and ruled that the evidence presented questions of fact for the jury. After all the proof was in, the motion to dismiss was renewed, and again denied. The jury found for the plaintiff for the sum of $1,260. Thereupon a motion was made to set aside the verdict, under section 999 of the Code, and to dismiss the complaint, which was granted. From the order setting aside the verdict and dismissing the complaint, and the judgment entered thereon, plaintiff appeals.

The defendant bases its contention that the action was not commenced in time, upon the theory that it only received proofs of claim on May 29, 1902, and, as the action was not brought until January 5, 1903, the six-months limitation specified in the policy had intervened. The record shows that on February 11, 1902, the day of the accident, the wife of plaintiff sent a postal card to the defendant, informing it of an injury to her husband, resulting in a loss of his foot above the ankle, and giving the number of the policy, to wit, 124,004. Thereafter, and on February 20, 1902, a statement of disability or injury prepared on one of defendant's blanks was filled out by her and sent to and retained by the defendant. This statement set forth in detail the nature of the injury, how it occurred, the name and address of the attending physician, and all particulars in connection with the injury, as required by this printed form. To quote the language of the form furnished, it was a statement of the injury, "with full particulars" relating thereto, and these "full particulars" were amply set forth. Accompanying this statement was a letter by plaintiff's wife as follows:

"Kimball C. Atwood, Secy.—Dear Sir: Mr. Norwood has not been able to sit up and write. I have filled this statement in the best I can, and, if not satisfactory, please return, and send another, and I will try to get Mr. Norwood to do it himself, if he is then able."

It was admitted that this statement and the letter were received on February 20, 1902. Thereafter, and on the said May 29, 1902, an "additional" statement of the injury was furnished. The record does not show who requested these additional proofs. When the plaintiff attempted to show at whose request they were prepared, the court, on defendant's objection, excluded the evidence. Between September 5, 1902, and October 7, 1902, negotiations were had between the parties looking to an adjustment of the claim. In the final letter of October 7, 1902, written by the general counsel of the defendant, an offer of $250 in settlement, made by a Mr. Lockwood on behalf of the defendant, was renewed, and the plaintiff was given until October 11, 1902, to accept the same, and if not then accepted the offer was to be considered withdrawn, "and the insured will then be at liberty to take such course in the matter as he may consider to be for his own best interest." From the evidence of plaintiff's former attorney, who was called as a witness on the part of the plaintiff, it ap-

peared that in September, 1902, he had an interview with both the president and the then secretary of the defendant, and its general counsel, in which they stated that they were still investigating the matter, that he need not be in a hurry about commencing an action, and that they would decide whether they would settle or not after further investigation.

While that conversation is denied on behalf of the defendant, we must, in view of the finding of the jury and the ruling of the court dismissing the complaint, adopt the inferences most favorable to the plaintiff. The plaintiff had given the notice of loss required by the policy when the postal card was sent on February 11, 1902, and furnished proof of disability or injury on February 20, 1902, when upon the blanks of the defendant he furnished "full particulars" of the injury in detail and as required by the defendant. The six months, therefore, within which to commence this action, would have expired on August 20, 1902. The defendant, however, continued its negotiations looking to a settlement of the claim down to October 7, 1902, and as late as September, 1902, was pressing upon plaintiff's attorney to delay commencement of the action until it could further investigate the claim and determine whether to settle the claim or stand suit. The defendant could have insisted that, as no suit had been brought prior to August 20, 1902, the insured had forfeited or lost all right of recovery by reason of the short statute of limitations fixed by the policy. But, instead of that, it continued to treat the policy as valid, and induced the plaintiff's attorney not to sue until further investigation could be made, and after such further investigation the letter of October 7, 1902, was sent, from which it appears that the defendant had concluded to renew an offer to settle, fixing a limit of time within which the offer must be accepted, and, if not accepted, the insured would then be at liberty to take such course as he deemed for his best interest, implying that, if he rejected the offer, he could then sue. In Titus v. Glens Falls Ins. Co., 81 N. Y. 410, at page 419, Judge Earl said:

"It may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as a matter of law waived; and it is now settled in this court, after some difference of opinion, that such a waiver need not be based on any new agreement or an estoppel."

See Roby v. A. C. Ins. Co., 120 N. Y. 510, 24 N. E. 808; Kiernan v. Dutchess Co. Mut. Ins. Co., 150 N. Y. 190, 44 N. E. 698.

The defendant takes the technical position that the six months should be computed from May 29, 1902, when the further or additional proofs of disability or injury were furnished. As we have stated, because of defendant's objection, the court excluded evidence as to the circumstances under which and at whose request these additional proofs were delivered; but we have the letter accompanying the proof of claim filed February 20, 1902, in which plaintiff's wife stated that, if they were not satisfactory, they should be returned to her, and she would send another. They were not returned, and, in view of its objection, the defendant cannot complain that the jury were left to infer at whose re-

quest they were furnished. The act of the assured in giving additional information subsequent to February 20, 1902, whether orally or in the form of a writing, did not substitute the latter information for the proofs first submitted and retained. Indeed, we find very little additional information in the later proof not found in the earlier one. The argument of the defendant entirely disregards the proof furnished on February 20th. These proofs cannot be considered as a mere notice of the injury, because the postal card, which preceded the proofs, sent on February 11th, gave the notice of the accident within the time and terms of the policy. We hold, therefore, that the action was commenced within time.

With regard to the second proposition raised by defendant, that the accident occurred through plaintiff voluntarily or unnecessarily exposing himself to danger or to obvious risks of injury, it is sufficient to say that the jury determined that issue in favor of plaintiff. The proof shows that when he alighted the train was going "very slow and had nearly stopped"; that for 20 years he had been employed as a brakeman, and was accustomed frequently to ride on trains and alight therefrom while in motion; that on the day he was injured his coat became caught in some way and he seemed to be dragged along. The evidence of another witness showed that the forward truck that passed over plaintiff's foot was about 18 inches or 2 feet away when the train stopped, indicating that at the time of the casualty the train had almost come to a standstill. Here was a combination of facts from which the jury could infer whether the exposure to risk was voluntary, unnecessary, or obvious, or the result of pure accident. In Lehman v. Great Eastern Casualty Co., 7 App. Div. 429, 39 N. Y. Supp. 912 (affirmed 158 N. Y. 689, 53 N. E. 1127), the court said:

"As we regard it, a voluntary performance of an act must require an exercise of the will of the actor. In other words, it is an act done in obedience to, and regulated by, the will of the person who does it. It follows, therefore, that it must be done designedly, and not accidentally, and, consequently, one cannot be said to be guilty of a voluntary exposure to danger, unless he intentionally and consciously assumes the risk of an obvious danger."

Counsel for defendant argued that that is just what plaintiff did do, namely, "intentionally and consciously" place himself in danger, by leaving the train as described by him. With this contention we cannot agree. It may be assumed that all creatures are desirous of preserving their lives and keeping their bodies from harm. Morrison v. N. Y. C. R. R. Co., 63 N. Y. 643. The assertion, therefore, that the plaintiff "intentionally" placed his person in jeopardy, is not of a character to carry with it conviction that such was the fact. We think the finding of the jury in plaintiff's favor on this question was correct.

Neither do we think that the third point, that plaintiff forfeited his right to recover under the policy by a misstatement in the proof of injury as to the manner in which the accident occurred, is tenable. The question whether there was any fraud or concealment was considered by the jury, and their finding against the defendant is supported by the evidence. In Titus v. Insurance Co., supra, it was held that:

"A misstatement would not avoid the policy, if it was a mere mistaken expression of opinion; but the misstatement must be false and fraudulent."

The proofs of February 20th were prepared, as we have stated, on a printed form of defendant, which, among other things, contained the question:

"State fully and particularly how the injury was received and what you were doing at the time of the injury."

Plaintiff's wife, who prepared the proofs, answered this inquiry as follows:

"Walking along the side of the car New York Central R. R., slipped on something, and fell under car."

She testified that this was in her handwriting, and that plaintiff was not present at the time she wrote it. In the statement furnished May 29th, the blank was filled out by an attorney in substantially the same manner. That there was no fraud or concealment intended is manifest from the correspondence with the defendant by one of plaintiff's former attorneys, who stated the facts as they were related by the plaintiff at the trial. It also appears, from the uncontradicted evidence of plaintiff, that after he returned to work on April 28, 1902, he had an interview with a Mr. Lockwood, a representative of the defendant, to whom he recited how the accident happened, and to whom he stated that he "stepped off the train, and slipped and fell on the platform, and lost my foot." The only evidence offered by the defendant against these facts were the written statements and proofs above referred to. The jury accepted the explanation of the plaintiff, and apparently by their verdict believed him. This negatived any finding of intentional fraud or concealment.

The order and judgment appealed from should be reversed, and the verdict reinstated, with costs to the appellant.

GILDERSLEEVE and LEVENTRITT, JJ., concur in the result.