JUDSON L. BUTTERFIELD, as Administrator of the Goods, Chattels and Credits of ARTHUR O. BUTTERFIELD, Deceased, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

Claim No. 15521.

Court of Claims, March, 1922.

**Negligence — death of militiaman guarding the canal — state liable when death is caused in part by its failure to keep lock illuminated — Canal Law, § 47.**

On the night before his death a young soldier in the New York State National Guard, one of a detail to guard a lock of the Barge canal, was ordered by his superior military officer to walk his post from midnight to six o'clock the next morning. It was frequently necessary for him in crossing from one side of the lock to the other to walk over the gates. Though he was seen walking his post as late as one-thirty on the following morning he was not seen thereafter until about five-thirty A. M. when his lifeless body was found in the lock. There was a small bruise on his cheek and his watch had stopped at one-forty-eight. Upon the hearing of a claim under section 47 of the Canal Law to recover for his death the evidence disclosed that had the facilities for lighting the lock

been in use the accident would not have happened. *Held*, that the omission of that precaution on the part of the state authorities was negligence, and a motion to dismiss the claim will be denied and the claim allowed in the sum of $5,000.

CLAIM to recover for death of militiaman.

*Brackett, Todd, Wheat & Wait*, for claimant.

*Charles D. Newton*, attorney-general (*Henry C. Henderson*, deputy attorney-general, of counsel), for the state of New York.

SMITH, J. This claim is for the recovery of damages resulting from the death of Arthur O. Butterfield, a private in the New York State Guard, who was drowned in lock No. 7 of the Barge canal, at Fort Edward, on August 14, 1917, while in the performance of ordered military duty, patrolling the lock.

The deceased was a healthy, industrious young man of good habits, a little over twenty years of age, and lived at home with his parents.

In June or July, 1917, by voluntary enlistment, he became a soldier in the Guard and four days before his death was assigned to duty as one of a detail to guard the lock against possible depredations by sympathizers with the enemy with which the United States was at war.

The lock was three hundred and twenty feet long, forty-five feet wide between the inner surfaces of its walls and twenty-eight feet deep. When the lock was filled the water in it was twenty-five feet deep, and when the water was drawn down to permit passage of boats to a lower level, the depth of water in the lock was twelve feet. The lock walls were of concrete construction and their inner faces were perpendicular. Across either end of the lock were the usual lock gates which were opened and closed as necessary in the operation of locking boats through. In crossing from one side of the lock to the other it was necessary to walk over the top surface of the gates, as there was no other means of crossing.

There were no railings or other barriers along the sides of the lock to protect one against falling into the lock. In fact, such railings would have been impracticable as they would interfere with and impede the handling of boats in the operation of locking through.

There were facilities at the lock for lighting it. There were three electric lamps on poles twenty-five feet high on each side of the lock, and when the electric current was turned on they lighted the entire lock. On the night of August 13, 1917, the current was turned off at twelve o'clock midnight pursuant to orders. This had been the practice for about four or five weeks. Previously the lock had been lighted all night.

On the night of August 13, 1917, deceased was ordered by his superior military officer to walk his post from twelve o'clock midnight of August thirteenth to six o'clock A. M. of August fourteenth. His post consisted of both sides of the lock which made it necessary for him frequently to cross from one side of the lock to the other by walking over the gates.

The night was dark and cool. Deceased was seen walking his post as late as one-thirty on the morning of August fourteenth. He was not seen thereafter until about five-thirty A. M. when his lifeless body was found in the lock. There was a small bruise on his cheek. His watch had stopped at one-forty-eight. Undoubtedly he had accidentally fallen into the lock and drowned, due to the darkness of the night and the unlighted condition of the lock. No other inference is suggested by the known facts and circumstances.

It is not reasonable to suppose that he deliberately committed suicide. In fact the contrary is presumed. *Morrison* v. *N. Y. C. & H. R. R. R. Co.,* 63 N. Y. 643; *Shaw* v. *Jewett,* 86 id. 616; *Norwood* v. *Preferred Accident Ins. Co.,* 56 Misc. Rep. 529.

Had the facilities provided for lighting the lock been in use the accident would not have happened. The unlighted lock was an extremely dangerous place in which to perform the duty which deceased was required to perform. The lock should have been lighted. The requirement of reasonable care will be satisfied by nothing less. The omission of that precaution on the part of the state authorities was negligence.

Contributory negligence on the part of deceased has not been alleged or proved.

Section 47 of the Canal Law provides in part as follows:

" Section 47. Claims for damages. There shall be allowed and paid to every person sustaining damages from the canals or from their use or management, or resulting or arising from the neglect or conduct of any officer of the state having charge thereof, or resulting or arising from any accident, or other matter or thing connected with the canals, the amount of such damages to be ascertained and determined by the proper action or proceedings before the court of claims; but no judgment shall be awarded by such court for any such damages in any case unless the facts proved therein make out a case which would create a legal liability against the state, were the same established in evidence in a court of justice against an individual or corporation."

The death of claimant's intestate having been caused by the neglect of the officers or agents of the state having charge of the canals, this claim is obviously one of the class in which the state

has consented to be held liable, for an individual or corporation would be liable on a similar state of facts. The state ordered deceased to perform the work of guarding state property and neglected reasonable precautions for his safety.

It is contended by the attorney-general that claimant cannot recover because deceased was a soldier and *McAuliffe* v. *State of New York*, 107 Misc. Rep. 553, is cited in support of that contention. The *McAuliffe* case is not in point. Section 47 of the Canal Law was not applicable or considered in the decision of the *McAuliffe* case. That section in terms provided that " there shall be allowed and paid to *every person* sustaining damages from the canals  *  *  * the amount of such damages to be ascertained and determined by the proper action or proceedings before the court of claims." Soldiers are not excepted from the benefits of the statute, which specifically designates this court as the tribunal to hear and determine claims of the class to which its benefits extend.

Claimant is entitled to recover the damages resulting from the death of his intestate, the amount of which has been fixed at $5,000. Findings in accordance herewith may be presented. The motion of the attorney-general for the dismissal of the claim is denied.

ACKERSON, P. J., and CORWIN, J., concur.

Judgment accordingly.