# CHARLESTON

ROBINSON *et al v.* KISTLER.

Submitted June 7, 1907.    Decided November 12, 1907.

1. APPEAL—*Review—Grant of New Trial.*
   This Court being called upon to review the action of a trial court in setting aside a verdict and awarding a new trial, it will inquire from the record what errors, if any, sufficient to justify such action, were committed at the trial to the prejudice of the party against whom such verdict was rendered, and whether such verdict is plainly contrary to law and the evidence. (p. 491.)

2. WITNESSES—*Impeachment.*
   When a witness is cross-examined on a matter collateral to the issue, he cannot, as to his answers, be subsequently contradicted by the party so cross-examining. (p. 492.)

3. MINES AND MATERIALS—*Mining Lease—Construction—Royalty.*

A lease for coal mining purposes stipulates for a fixed minimum royalty, to be payable from a stated time, and provides that if the lessee is disabled or prohibited from mining or shipping coal, by reason of strikes, accidents or any cause of stoppage of transportation over which the lessee has no control, the minimum royalty shall be suspended for the period of such disability; *Held:*

(*a*) That the obligation to pay the minimum royalty ceases during any period of such disability, and for such period the lessee is liable only for royalty on the coal actually mined and shipped. (p. 493.)

(*b*) That the words "over which the lessee has no control" are practically synonymous with "for which the lessee is not to blame" or "without the fault of the lessee," and relate only to the personal or immediate control of the lessee. (p. 495.)

Error to Circuit Court, Harrison County.

Action by Camisee D. Robinson and others against Flavius J. Kistler. Judgment for plaintiffs, and defendant brings error.

*Affirmed. Remanded.*

DAVIS & DAVIS, for plaintiffs in error.

JOHN BASSEL and L. C. CRILE, for defendants in error.

ROBINSON. JUDGE:

The writ of error herein is prosecuted to the action of the circuit court of Harrison county in setting aside a verdict rendered in favor of the defendant below, and granting to the plaintiffs there a new trial.

Camisee D. Robinson and others instituted their action against Flavius J. Kistler, in *assumpsit*, at March Rules, 1904, for the recovery of royalties alleged to be due and unpaid upon a certain lease for coal mining purposes, executed by the plaintiffs to the defendant on the 11th day of January, 1901. The general issue was joined, and upon trial had the jury found a verdict in favor of the defendant. Thereupon, the plaintiffs moved to set aside the verdict of the jury, and the motion being considered by the court, the verdict was set aside and a new trial awarded, and the defendant excepted.

The lease declared upon, and under the terms of which payment for royalty was demanded in said action, contained the following clause:

"The said party of the second part agrees to pay to the said parties of the first part at least $900.00 for the first year, $1,500.00 for the second year and $2,100.00 for each year thereafter until the said coal is all mined; that is the minimum royalty to be 15,000 tons for the first year, 25,-000 tons for the second year, and 35,000 tons for each subsequent year until the coal is mined. The first year under this clause is to commence when the Short Line Railroad Company is ready to receive coal at this point, not to be later than January 1st, 1902; but it is understood that in case of strikes, accidents or any cause of stoppage of transportation over which the second party has no control and he is disabled or prohibited thereby from mining or shipping coal from the said mine then the minimum royalty as above specified is to be suspended for the period of such disability."

There is no conflict of testimony on any material point, and the record shows that defendant began shipments of coal under the lease on May 8, 1902; that for all the coal actually mined and shipped during the period covered by the declaration, the defendant made payment to the plaintiffs; that the defendant was never, after he began shipments of coal, furnished, by the only railroad company or public carrier by which transportation could be had from the mine, with sufficient railroad cars to mine and transport the minimum amount of coal stipulated in the lease; that the defendant was urgent and insistent in his efforts to secure such supply of railroad cars; that such lack of supply of cars was beyond his personal control; and that by reason of the failure to receive a sufficient supply of railroad cars he was disabled and prohibited from mining and shipping the minimum amount agreed. The mining lease in question was introduced upon behalf of plaintiffs, and is the basis of their action.

The case coming here upon error assigned to the action of the court below in setting aside the verdict in favor of defendant and awarding plaintiffs a new trial, we are therefore called upon to inquire from the record what errors, if any, the trial court had committed to the prejudice of the plaintiffs, and that justified a disturbance of the verdict, or whether or not said verdict was contrary to law and the evidence.

An exception was reserved by the plaintiffs to the action of the court in overruling their motion made during the trial to strike out so much of the testimony of the defendant, as a witness in his own behalf, as relates to inadequate car supply on the ground, as alleged, "that the contract provides that the payment of the royalty shall only be suspended because of stoppage of mining and shipping of coal." But in view of the stipulation in the lease that the minimum royalty shall be suspended for the period that the lessee is disabled or prohibited from mining or shipping coal by reason of strikes, accidents or any cause of stoppage of transportation over which the lessee had no control, it is observed that the objection to the testimony was not well taken and was properly overruled. It will certainly not be argued that a failure in car supply is not a cause of stoppage of transportation. The ground alleged as a basis for said motion contains a faulty recital of the terms of the lease.

It appears that at the close of defendant's testimony the plaintiffs re-called a witness, who was asked if he ever applied to the coal office of the mine for permission to examine the books and see as to the shipments of coal and was refused. There was objection by defendant to the question, which objection was sustained, and the plaintiffs excepted. The only purpose of this question could have been for rebuttal of matter brought out on the cross-examination of the defendant, and which we find to be wholly collateral and immaterial to the real controversy, and not related to or connected with anything that the witness had been asked or testified in chief. It was properly rejected. "When a witness is cross-examined on a matter collateral to the issue, he cannot, as to his answer, be subsequently contradicted by the party putting the question." 1 Wharton on Evidence, section 559; *State* v. *Goodwin*, 32 W. Va. 177.

Are the three instructions that were given on behalf of plaintiffs at such variance with the law and facts applicable to the case as made, as to justify the court below, upon more mature consideration of them, to set aside the verdict? In view of the final conclusion we are compelled to reach in this opinion, it avails nothing to set out these instructions

and to discuss them in detail. It suffices to say that, taking them together, and as related to a true construction of the said lease, and the facts proven, no instructious more favorable to plaintiffs could have been given, and that the verdict cannot be said to be at variance with them, except in a particular to be hereinafter discussed. In fact, we do not hesitate to say that the instruction asked for by the defendant, to the effect that the defendant was not required to pay to the plaintiffs the minimum royalty specified in the lease for such period as he might be disabled or prohibited from mining or shipping coal from his mines by reason of strikes, accidents or any causes of stoppage of transportation over which defendant had no control, and that if the jury should find from the evidence that by reason of the failure or refusal of the railroad company to furnish cars for transportation of his coal the defendant was prevented during the period in question from mining or shipping from his mine the minimum quantity of coal agreed in said lease, and that such failure was beyond the control of the defendant, and that defendant paid the plaintiffs the agreed royalty upon all the coal actually mined and shipped by him during said period, then the jury should find for the defendant, presented the true construction of the clause of said lease in relation to the minimum royalty; but this instruction was properly refused since it was inconsistent with the total want of evidence that for the period from January 1, 1902, to May 8, 1902, defendant was so disabled or prohibited from mining or shipping coal.

The construction of this minimum royalty clause contended for by counsel for plaintiffs below, who argue that it simply defers or postpones the payment of the minimum until the happenings mentioned have passed, is untenable. The clause is definite, direct and wholly unambiguous in its stipulations. It is a most usual one in such contracts, and the provision against the penalty of the minimum royalty, or "dead rent" as it is called in England, in the event of accidents or other insuperable contingencies, wholly beyond the fault of the lessee and for which in justice he should not be penalized by the payment of such dead rent when something other than his own idleness has caused him to fail to produce the minimum, is also most ordinary and is sanc-

tioned by good reason and fair stipulation between the lessor and lessee. MacSwinney on Mines, 217. The stipulation in the lease in this case not only fixes a time, in no uncertain language, for the minimum royalty to become a spur to diligence by the lessee in working the mine and producing royalty for the lessor, but it also provides a time when that spur shall not be used, and shall not prick the flesh of the lessee, that is, during the existence of strikes, accidents, or any cause of stoppage of transportation over which the lessee has no control. This provides against the three great causes that prevent the operation of coal mines in this modern age, and the contract must be construed with reference to the common knowledge which all persons have of the things which would prevent the lessee, without fault on his part, from diligently prosecuting the mining and producing royalty to the lessor. Most naturally would parties after fixing a dead rent upon the lessee as a spur to his diligence, provide for a taking off of this spur when the lessee without fault could not make the minimum. This was done in the lease under consideration by providing that "the minimum royalty as above specified is to be suspended for the period of such disability," thereby using to express such meaning not only the usual every-day words of common speech to express it, but the language of the law when it refers to the cessation of or absolute relief from rent because of a disturbance of a tenancy. The dictionaries say that "to suspend" is "to cause to cease for a while." Taking the language of this lease and reading it in the light of the purposes for which it was made, and the things to which it relates, to say nothing of the common as well as the legal acceptation of the terms employed, we must say that the minimum royalty ceased when any of the things happened that are provided against therein, and was again effective when those things, in their turn, were suspended, or ceased. Huffcut's Anson on Contracts, section 344; *Carnegie Nat. Gas Co.* v. *South Penn Oil Co,*, 56 W. Va. 402.

The fourth instruction asked by the plaintiffs was refused, and properly so. It would have instructed that the defendant was required to use all reasonable effort to obtain cars to carry coal from his mine, and if the railroad company that supplied cars for said mine refused to furnish cars

sufficient for the requirements of the defendant, or capacity to transport enough coal to amount to the minimum royalty to be paid to the lessors at the agreed rate per ton, and if said railroad company did not furnish a sufficient number of cars upon request, it was the duty of defendant to resort to legal process if necessary to compel said railroad company to furnish sufficient cars if it could do so, and the burden devolved upon the defendant to show that said railroad company did not have sufficient cars to furnish him an adequate number for said purpose, in order to relieve him from the duty of resorting to legal process to obtain such supply of cars. The construction of the words of the lease, "any cause of stoppage in transportation over which the second party has no control," as insisted for by the proposed instruction, is not a reasonable one, since the control mentioned in the stipulation plainly means the immediate or personal control of the lessee, and not the control of the law. Can we say that in making this contract the parties had in contemplation such an extraordinary proceeding as an appeal to the courts by the lessee to compel transportation of the coal? They had reason to presume, and we must say they did so presume, and that it entered into the making of the contract, that the common carrier would fulfill its duty as such and furnish all the transportation in its power. They provided fair relief from the dead rent in the event of car shortage, but there is not a word to indicate that they were acting on anything but the reasonable and legal presumption of obedience to duty by the carrier. The words of a contract will be given a reasonable construction, if possible, rather than an unreasonable one. Bishop on Contracts, 400; Clark on Contracts, 563; 9 Cyc. 587. These words, "over which the second party has no control," are simply another way we have of saying, almost every day in making contracts, "for which the second party is not to blame," or "without the fault of the party of the second part." The word "control" has no legal or technical meaning distinct from that given in its popular acceptation, and we must here construe the word "control" to mean the immediate control of the party and not to refer to some remote control or uncertain remedy of control. It was so construed in *Pullman Palace Car Co.* v. *Missouri*

*Pac. Ry. Co.*, 115 U. S. 587, by the late Chief Justice Waite. To say that it was within the control of the lessee to resort to uncertain proceedings to secure cars from the carrier, which carrier was presumed to obey its duty to the public when this stipulation was entered into, we may as well say that it was within the control of the lessee to purchase his own railroad cars and thereby prevent a stoppage of transportation. But will it be conceived for one moment that such idea of the word control entered into the contemplation of the parties when this lease was made.

The two instructions given on behalf of defendant, and without objection by the plaintiffs, are proper, and their soundness not being questioned by counsel, we may pass them without discussion.

In consideration of what we have said, it appears that the trial court had committed no errors to the prejudice of plaintiffs, and we must therefore see whether the verdict in defendant's favor is so contrary to law and the evidence as to demand its being set aside and new trial awarded.

As has been said, there is no substantial conflict in the evidence. The parties practically stand agreed on the material facts. The lease has been introduced, and speaks for itself. It provides that the first year under the minimum royalty clause "is to commence when the Short Line Railroad Company is ready to receive coal at this point, not to be later than January 1st, 1902." It is shown clearly by the evidence, the defendant's own testimony, that the first shipment of coal from the mine was on May 8, 1902. All the coal for which cars could be secured was mined and shipped after that time, and payment of the royalty thereon made, but it was less than the minimum. It is shown that the railroad company, notwithstanding pleadings and insistence by the defendant almost daily, would not furnish sufficient cars to carry away the minimum, and that the same could have been easily mined if such transportation of the product could have been secured. But there is not a word in the case to excuse the defendant's liability for the minimum royalty from January 1, 1902, the definite date when it became effective to May 8, 1902, when shipments began. He

shows no excuse under the provisions of the lease for such delay of shipment, and his want of diligence, if such it was, or failure without excuse to mine and ship, for that period is to be compensated, under the stipulations of the lease. by the minimum royalty, and the plaintiffs were clearly entitled to a verdict for proper amount thereof. This being true, the verdict was contrary to the evidence and the law applicable to the case, and for such reason was rightly set aside. *Coalmer* v. *Barrett*, (W. Va.), 56 S. E. 385.

The order of the circuit court in setting aside said verdict and awarding a new trial is therefore affirmed, and this case is remanded.

*Affirmed. Remanded.*