# CHARLESTON.

BEARD v. THE INDEMNITY INSURANCE COMPANY.

Submitted March 17, 1908.  Decided March 9, 1909.

1.  INSURANCE—*Accident Policy—Evidence—Sufficiency.*
     In an action on a policy of accident insurance, evidence that insured was found lying at the bottom of a wall, badly injured,

near the unrailed top of which he was reclining on a bench only shortly before, alone, and in the darkness of night, makes a *prima facie* case of injury by violent, external and accidental means. (p. 288.)

2. SAME—*Actions—Presumption and Burden of Proof.*

In such case, unless the injury is shown to have been intentionally self-inflicted, or intentionally inflicted by some other person, the legal presumption is that it was accidental. (p. 289.)

3. SAME—*Defenses—Intoxication:*

Where an accident policy is conditioned against liability for injury happening while insured is intoxicated, and where plea in that behalf is to be successfully relied upon, the evidence must show that insured was actually intoxicated at the time the accident befell him. (p. 289.)

4. EVIDENCE—*Intoxication—Appearance Before and After Time.*

Evidence as to appearances of intoxication, or their absence, by witnesses who saw insured immediately before or after the injury, is proper and admissible in that behalf. (p. 290.)

5. SAME—*Similar Acts or Condition.*

It is a general rule that, where the issue is whether a person did a particular thing, or was in a particular state, the fact that he did a similar thing, or was in a similar state, at some other time, is inadmissible. (p. 290.)

6. INSURANCE—*Accident Policy—Risks and Exceptions—Being on Railway or Bridge.*

In an accident policy, excepting liability for injury to insured while on the roadbed or bridge of a railway, the manifest intention is to exempt the insurer from responsibility for injury caused by collision with moving trains thereon. (p. 290.)

7. SAME—*Accident Policy—"Voluntary Exposure to Unnecessary Danger."*

In an accident policy which exempts liability as to an injury caused by the insured's "voluntary exposure to unnecessary danger," those words are properly interpreted to refer only to danger of a real, substantial character, which the insured recognized, but to which he nevertheless purposely and consciously exposed himself, intending at the time to assume all the risks of the situation. (p. 290.)

8. SAME—*Accident Policy—Exemptions from Liability—Strict Construction.*

Words of exception from liability, in an accident insurance policy, are construed liberally in favor of the insured. (p. 292.)

9. SAME—*Accident Policy—Exemptions—Construction—"Voluntary or Negligent Exposure to Unnecessary Danger."*

The phrase "voluntary or *negligent* exposure to unnecessary

danger," in a policy of accident insurance exempting the insurer from liability for injury from cause so expressed, is a cumulative or redundant expression, and is properly interpretable as "voluntary exposure to unnecessary danger." (p. 292.)

10. SAME—*Accident Policy*—"*Voluntary Exposure to Unnecessary Danger.*"

Sitting or lying on a bench at the side of a building, near the top of an unguarded wall, on a dark night, it not appearing that insured in so doing was conscious of the pitfall, or had knowledge of his surroundings, is not "voluntary exposure to unnecessary danger," within the meaning of those terms in a policy of accident insurance exempting the insurer from liability for injury caused by such exposure as is defined by said terms. (p. 294.)

11. NEW TRIAL—*Verdict—Setting Aside.*

A verdict fairly rendered, in a case fairly submitted to a jury, should not be set aside by the court, unless manifest injustice has been done, or the verdict is plainly not warranted by the evidence. (p. 295.)

Error to Circuit Court, Cabell County.

Action by Thomas Beard against the Indemnity Insurance Company. There was a verdict for plaintiff, and from an order setting the same aside and granting a new trial, plaintiff brings error.

*Reversed.*

WYATT & GRAHAM, for plaintiff in error.

McCOMAS & NORTHCOTT, for defendant in error.

ROBINSON, JUDGE:

On the trial of an action upon a policy of insurance against death resulting from bodily injuries caused by external, violent and accidental means, a verdict was rendered by the jury in favor of the beneficiary for the amount to be paid by the insurer upon the happening of such contingency. That amount was one thousand dollars. The verdict was set aside as contrary to law and the evidence and a new trial was awarded. To that action of the court below, this writ of error is prosecuted.

To justify the aforesaid action of the court, it must be found that errors were committed at the trial to the prejudice of the defendant or that the verdict was contrary to law and the evidence. *Robinson* v. *Kistler*, 62 W. Va. 489. The defendant does

not complain that errors to its prejudice were made at the trial of the case. It relies upon the assertion that the verdict was contrary to law and the evidence. Then, it is as to this assertion only that we are called upon to inquire.

The real substance of the evidence is as follows: The insured was found, some time between 9:30 and 10:30 o'clock at night, badly injured, at the foot of a high wall where 16th Street, in the City of Huntington, passes under the tracks of the Chesapeake and Ohio Railway. He was unconscious at the time, and died a few hours later in a hospital, never having regained consciousness. Just before he was found injured, insured was seen lying on a bench by the side of the telegraph office, which is situated at the top of this wall, very near its edge, and just above the point at which he was found. The telegraph office is near the railway tracks, and on a level therewith, it seems. The wall is one necessary to the lowering of the street so as to make the street cross the railroad under grade. At the telegraph office it was not guarded by a railing. The night on which the injury occurred was dark, and the electric light at the intersection of 16th Street and the railroad was not burning. The insured was an extra locomotive fireman of the railway company. His run was from Russell, Kentucky, to Handley, West Virginia. He frequently stayed with his brother, the beneficiary of the policy, who resided in Huntington; but he had not been there for several days. The road foreman of engines testifies that men making such run out of Russell but living in Huntington, frequently board trains at the telegraph office above designated to deadhead to Russell. There is no direct evidence, however, that the insured was ever at this telegraph office before. The yardclerk, whose duties were at that place and whose office was located there, when asked if he had ever seen the insured come there to take a train, replied: "I don't know whether I ever saw him; no sir." No one knows just how the injured man came to fall from the wall. A hostler who was attending some engines there saw the insured lying on the bench as he passed into the office. The insured was still lying there when this hostler came out of the office and walked to the upper end of the railway bridge over the street. When he reached that part of the bridge, he heard an unusual noise. He at once returned toward the office, and noticed that the insured was not on the bench. An

investigation was immediately made, and insured was found below the wall as mentioned above. The yard-clerk testifies that he saw the insured sitting on this same bench near the same hour above named; that he addressed him in a friendly way; and that the insured answered. He did not know the insured personally. It was this yard-clerk and the hostler who found him at the bottom of the wall. Both testify that they observed no evidence of intoxication, either before or after they found him. By the police judge it was proved that two or three days before the accident, the insured had been brought into his court on a charge of drunkenness. Insured was comparatively sober at the time he was tried. He was not again seen by said official. The secretary of the insurance company testifies that he saw the insured the day before he was injured, and that he was then intoxicated. A policeman testifies that he saw him near a saloon some time after supper the evening on which the accident occurred; and adds that it was "between eight and half past ten o'clock. I can't tell just exactly what time." The policeman says the insured "looked like he was intoxicated right smartly when he came through." It seems that the insured passed through the saloon. The policeman, however, says that he was not drunk enough to be arrested; that he was not disturbing the peace; that he did not smell insured's breath; and that he did not see him drink anything. He testifies that the saloon was crowded, but can name no other of the many people there; nor can he tell how the insured was dressed, what kind of hat he wore, or whether or not he had on his working clothes. The physician who attended the injured man, as a witness for plaintiff, described the extent of the injuries and the result thereof. This witness, though, was not examined by either party as to whether or not any evidences or appearances of intoxication were manifest.

The policy provided that it did not cover any injury occasioned wholly or partly, directly or indirectly, by many things, among them being intoxication and voluntary or negligent exposure to unnecessary danger. And it also provided no insurance against injury received while the insured was on a railroad bridge or roadbed, except as to railway employes while on duty incident to their occupation.

The insurance company defended under the general issue and

by three special pleas, relying upon the averments that the insured was intoxicated at the time of the injury to him; that such injury was due to voluntary or negligent exposure to unnecessary danger by insured; and that the injury was received while the insured was on a railroad bridge or roadbed at a time when he was not on duty incident to his occupation as a railway employe. These defenses, except the last named, were further availed of by three instructions asked and given on behalf of defendant. The first instruction was to the effect that the jury should find for the defendant if they believed from the evidence that the insured was in a state of intoxication at the time he received the injury which caused his death. The second instruction was that the jury should find for the defendant if they believed from the evidence that the insured voluntarily or negligently exposed himself to unnecessary danger which resulted in the injury that caused his death. The third was to the effect that the jury should find for the defendant if they believed from the evidence that at the time of the accident complained of the insured was intoxicated, and that by reason of such intoxication he stepped or fell from the top of the east wall of the 16th Street undergrade crossing, receiving the injury which resulted in his death.

Thus, we see, the issues submitted to the jury were plain. The plaintiff sought to establish injury, from which death resulted to the insured, by violent and accidental means. The defense sought to establish intoxication, voluntary or negligent exposure to unnecessary danger, or that the insured was on a railroad bridge or roadbed, at the time of the injury. The sufficiency of plaintiff's evidence was not challenged by defendant at the trial. The defendant rested the case with the jury, relying upon instructions given in its behalf, as we have noted. Plaintiff asked no instructions, relying solely on his evidence. But after the verdict had been found against defendant, on motion for a new trial, and now upon this writ of error to the order setting aside that verdict, much is argued as to the insufficiency of the case made to sustain plaintiff's issues. It is now insisted that it is not proved that the insured met his death by accidental means; that he may have committed suicide, or that another may have pushed him over the wall. The testimony on this point was sufficient to go to the jury. As we have seen, the insured, alone, was lying on the bench when the hostler, who

later evidently heard him fall, passed into the office and out again going to the bridge. The distance this witness went before he was attracted by the noise was very short. It seems conclusive that the noise was caused by the insured's fall over the wall. There is no evidence of the presence of another at this time or of the retreat of any murderer. Neither does the evidence reasonably indicate suicide. The jury could well believe from this evidence, and it seems satisfactorily so, that the insured rose from the bench in the darkness and walked over the wall. There is no evidence that he was acquainted with his surroundings. The jury were justified in finding, from the facts and circumstances, that his death was due to violent and accidental means. A *prima facie* case of accidental death was made. Defendant did not even undertake to rebut such *prima facie* case. Directly pertinent to this case is Niblack on Insurance, § 377. Therein it is stated: "In an action on an accident policy, testimony of physicians that the assured bore on his back marks of extreme violence, apparently recently inflicted, and that his injuries produced his death, is *prima facie* evidence of death resulting from bodily injuries, 'through external, violent, and accidental means.' Unless such injuries were intentionally self-inflicted, or intentionally inflicted by some other person, the legal presumption is that they were accidental. No presumption can be indulged that the law has been violated, as it would have been were the injuries inflicted by another. There may be a *prima facie* case of accidental death, but the burden of proving accidental death is on the plaintiff. Where it appears that a violent death was either the result of accidental injuries or of a suicidal act of the deceased, the presumption of law is against the latter."

Is there in the record evidence of intoxication of the insured at the time of the injury? The mere fact that he had been drunk before does not prove that he was drunk at the time of the injury. Drunkenness at that time must be established if it is to avail as a defense. The only testimony that he was intoxicated near the time of the accident is that of the policeman, and that witness cannot definitely fix the time so as to bring it near enough the time of the accident to justify the jury in believing that he was drunk when the accident happened. The jury saw this witness, heard his cross-examination, and had a right to

accept or reject his credibility.  He confesses, as shown by that cross-examination, that he took little notice of the insured when he saw him.  He says that he was intoxicated, yet he could not tell how insured was dressed.  Nor can he tell what else he saw at the saloon.  It seems that he noticed only that this man was drunk.  The jury could well say that his statement that the man was drunk was improbable.  The fact that the insured was about the saloon and had been drunk on two former occasions is not evidence that he was intoxicated when the injury befell him.  It is a general rule that, where the issue is whether a person did a particular thing, evidence as to the fact that he did a similar thing at some other time is inadmissible. 1 Wharton on Evidence, § 29.  The two witnesses who saw insured just before and after the injury say that they saw no evidence of intoxication.  And such evidence, as compared with that relied upon herein to establish intoxication was for the consideration of the jury.  Evidence of appearances as to intoxication is proper in this class of cases.  Niblack on Insurance, § 390.

The claim of the defendant that the insured was on the bridge or roadbed of the railway company is in nowise sustained.  And at the time of asking instructions to the jury, this claim seems to have been abandoned by the defendant.  There is not the slightest evidence to sanction defense on this ground.  Insured was not on the roadbed or bridge of the railway.  Besides, as to a clause exempting from liability for injury to insured while on such roadbed or bridge, it is wisely said that "the manifest intention is to exempt from responsibility for damages caused by collision with moving trains thereon." *Burkhard* v. *Insurance Co.,* 102 Pa. St. 262.

Was there a voluntary or negligent exposure to unnecessary danger on the part of insured?  It is insisted that the injury was caused by his negligence, and that the insurer is, therefore, not liable.  In this case, the clause of the policy conditioning recovery by the words "voluntary or negligent exposure to un-necessary danger" is at least different in phraseology from that usually found in accident policies and met with in judicial interpretation.  The most usual expression passed upon in the reported cases is "voluntary exposure to unnecessary danger." A clause similar to the one last mentioned was under considera-tion by this Court in *Diddle* v. *Continental Casualty Company,*

decided at this term. It was therein held that "either reckless or deliberate encountering of known danger, or danger so obvious that a reasonably prudent man would have observed and avoided it, if the circumstances were not such as necessitated the encountering thereof," constituted such voluntary exposure. That holding is clearly sustained by authority and principle. Vance on Insurance, § 240, says: "It is a familiar principle that the insurer assumes the risk of the insured's negligence, provided there be no bad faith on the part of the latter. Accident insurers, however, have essayed to change this rule, and to import into the insurance contract the doctrine of contributory negligence, by inserting a provision excepting themselves from liability for 'injury or death caused by the voluntary exposure of the insured to unnecessary danger,' or other words of similar effect. This exception merely imposes upon the insured the duty of exercising ordinary care in order to avoid sustaining any sort of injury. He is not required to exercise any unusual degree of care." The eminent Mr. Justice Harlan, in *Travellers' Ins. Co.* v. *Randolph,* 78 Fed. 761, said: "What do the words 'voluntary exposure to unnecessary danger' in the contracts in suit import? * * * * The words 'voluntary exposure to unnecessary danger,' literally interpreted, would embrace every exposure of the assured not actually required by the circumstances of his situation, or enforced by the superior will of others, as well as every danger attending such exposure that might have been avoided by the exercise of care and diligence upon his part. But the same words may be fairly interpreted as referring only to dangers of a real, substantial character, which the insured recognized, but to which he nevertheless purposely and consciously exposed himself, intending at the time to assume all the risks of the situation. The latter interpretation is most favorable to the assured, does no violence to the words used, is consistent with the object of accident insurance contracts, and is, therefore, the interpretation which the court should adopt." In *DeLoy* v. *Travellers' Ins. Co.,* 171 Pa. 1, it is held, most sensibly, we think, "that if a man acts so recklessly and carelessly that he shows an utter disregard of a known danger, he may be said to have exposed himself voluntarily to danger." The same case further affirms that "if the risk of danger is so obvious that a prudent man, exercising reasonable foresight,

would not have done the act, then he may be said to have voluntarily exposed his person to danger."

Now, does the use of the word "negligent" in the clause demand from the insured a greater degree of prudence and care than that enunciated in these authorities? The rule is now firmly established that limitations on the liability of the company are construed most strongly against the insurer or liberally in favor of the insured. Niblack on Insurance, § 367; *Fidelity & Casually Co.* v. *Chambers*, 93 Va. 138. Chancellor Kent says that the true principle of sound ethics is to give a contract the sense in which the person making the promise believes the other party to have accepted it, and a just sense should be exercised in so interpreting it as to give due and fair effect to its provisions. 2 Kent Com. 555. This just principle of interpretation applies fittingly to contracts of accident insurance. Are we to say that the use of the word "negligent," as aforesaid, is to exempt the insurer from all liability because perchance some slight negligence of the insured has contributed to accidental injury? To do so would result in the destruction of the real purpose of indemnity of this character. It has been pertinently said: "A very large proportion of those events which are universally called accidents, happen through some carelessness of the party injured, which contributes to produce them. Thus, men are injured by the careless use of fire-arms, of explosive substances, of machinery, the careless managemeint of horses, and in a thousand ways, where it can readily be seen aftewards that a little greater care on their part would have prevented it. * * * * It is true that accidents often happen from such kinds of negligence. But, still, it is equally true that they are not the usual result. If they were, people would cease to be guilty of such negligence. But cases in which accidents occur are very rare ·in comparison with the number in which there is the same negligence without any accident. A man draws his loaded gun toward him by the muzzle—the servant fills the lighted lamp with kerosene—a hundred times without injury. The next time the gun is discharged, and the lamp explodes. The result was unusual, and therefore as unexpected as it had been in all the previous instances. So there are, undoubtedly, thousands of persons who get on and off. from cars in motion without accident, where one is injured. And, therefore, when

an injury occurs, it is an unusual result, and unexpected, and strictly an accident." *Schneider* v. *Insurance Co.,* 24 Wis. 28. And here we approvingly quote from *Rustin* v. *Insurance Co.,* 58 Neb. 792: "Accident insurance is not designed to furnish indemnity only in cases where the policy holder orders his conduct with grave circumspection and provident foresight of consequences. Mere contributory negligence is no answer to an action on a contract of insurance." Therefore, an insurer against accident must not be relieved from liability because of mere contributory negligence unless the contract is plain and unequivocal that it should be. Surely we shall not say that the word "negligent" is to be given a meaning indicating a degree of exposure less than that indicated by the word "voluntary" which is used before it in the clause in the policy under consideration. To give it such construction would grant almost limitless scope to the ingenuity of insurance companies in framing contracts of this character so as to make the exceptions in fact destroy the real purpose for which the insurance was obtained. Used, as it is, in connection with the word "voluntary," it is fairer to say that it is simply cumulative to that word, meaning no more than that word. Or its use in the clause may fairly be said to be redundant, since in a practical sense every exposure of one's body to an unnecessary danger is a negligent exposure to such danger. In view of the well established rule of construction in such cases, the true purposes of such contracts, and the connection in which the word "negligent" is used, we hold that its use is simply cumulative or redundant, and that the clause means no more than "voluntary exposure to unnecessary danger." Using the language of Mr. Justice Harlan, as quoted above, "the latter interpretation is most favorable to the assured, does no violence to the words used, is consistent with the objects of accident insurance contracts, and is, therefore, the interpretation which the court should adopt."

The evidence does not justify the conclusion, as a matter of law, that the insured voluntarily exposed himself to unnecessary danger, within the meaning of those terms as applied to cases of this character. Whether he did so expose himself, therefore, was a proper question for the determination of the jury from all the facts and reasonable inferences in that regard. Nor can it be justly said that the jury's evident finding that

he did not so expose himself to such danger is plainly wrong, amounting to a miscarriage of justice. Really, it was not proved that insured was even guilty of contributory negligence, to say nothing of the degree of negligence required to be shown under such clause as the one under which exemption from liability is claimed. It does not appear that the insured had knowledge of his surroundings or of any danger near him, when the accident befell him. Where the danger is unknown, the injury is accidental, not the result of voluntary exposure. The mere custom of railroad employes who make runs out of Russell to catch trains for that place at the telegraph office near which the injury occurred does not prove that the insured ever followed that custom. That circumstance of itself is insufficient. Yet it is all there is in the evidence from which it can be said that insured was ever at the bench on a previous occasion. Nobody says that he was there before, or that he was acquainted with the surroundings. It is true that his run as fireman was by this place, but he cannot be reasonably charged with knowledge of situations at places in view of which he passed as such employe, engaged in duty requiring his attention to the train. For all that is known, he may have prudently gone to this place for the first time, found the bench and occupied it, reasonably believing himself perfectly safe on that which was evidently provided for others. The electric light was not burning. Its accidental failure to burn may have prevented his observing the pitfall. That he was about a city at night is not negligence, unless it were ·shown that he went to a place which he knew to be dark and dangerous, or that he should reasonably have known it. Sitting or lying on a bench near the top of an unguarded wall is not voluntary exposure to unnecessary danger within the meaning of those terms in a policy of accident insurance, even if it were shown that the insured knew of the wall and the lack of railing on it. Prudent men do such things. There is no danger while one's faculties are present. Sudden loss of those faculties would be merely accidental, unexpected. It is not·shown that insured was asleep on the bench or that he intended to sleep there. He may have never intended to sleep on it, yet he may have accidently gone to sleep. And it may have been that while in that state he rose from the bench and fell over the wall. In *Scheiderer* v. *Travellers' Ins. Co.*, 58 Wis. 13, injury under

similar circumstances is held not to be the result of voluntary exposure to unnecessary danger. And elsewhere it is held: "One who lies down to sleep on the top of the boilers of a steamboat, and is there injured by steam escaping from a safety valve, is not guilty of voluntary exposure to unnecessary danger, though warned not to sleep there, unless he was conscious of the danger from escaping steam from the safety valve." *Travellers' Ins. Co.* v. *Clark,* 109 Ky. 350. In all the cases there runs the demand that the danger shall be of a substantial kind, shall be unnecessary, known or obvious, and that the exposure to it shall be of a reckless or deliberate character.

· These observations upon the evidence are sufficient, we think, to show the insufficiency of the evidence relied upon to sustain exemption because of voluntary exposure to unnecessary danger. By the sound inferences to be drawn from all the facts and circumstances, it is not established that there was exposure to danger of the substantial kind that will excuse from liability, or to any danger that was obvious to insured. In *Travellers'. Ins. Co.* v. *Clark, supra,* it is held: "The words 'voluntary exposure to unnecessary danger,' when employed in a contract of life and accident insurance, relate to dangers of a substantial character which the insured recognizes and to which he, nevertheless, consciously and purposely exposes himself, intending at the time to assume the risk of the danger."

Upon the evidence adduced in the case, the issues were properly to be disposed of by the jury. The verdict is not against the decided weight and preponderance of the evidence. The case was fairly submitted to a jury. A verdict was fairly rendered by that jury. No manifest wrong or injustice appears. The verdict is not unwarranted by the evidence. Under such circumstances, what justification can there be for disturbing the verdict and denying to plaintiff the result thus fairly gained? There is none. The action of the circuit court in setting aside the verdict and awarding a new trial is contrary to well established law. *Coalmer* v. *Barrett,* 61 W. Va. 237; *Smith* v. *Railway Co.,* 48 W. Va. 69; *Young* v. *Railroad Co.,* 44 W. Va. 218; *Miller* v. *Insurance Co.,* 12 W. Va. 116; and many other cases.

The action of the trial court in setting aside the verdict and awarding a new trial is erroneous. It is, therefore, reversed. This Court now proceeding to render such judgment as the

circuit court should have rendered, it is considered that the plaintiff recover from the defendant the sum of one thousand dollars, with interest thereon from the 17th day of April, 1906, and his costs about the prosecution of his case in the circuit court expended.

*Reversed.*