### NEW PITTSBURG COAL CO. v. NEW YORK COAL CO.

1. CONSTRUCTION OF TERMS OF MINING CONTRACT.

A coal mining contract, after providing that the second party should mine and remove a specified annual minimum quantity of lump coal and pay a royalty thereon to the first party at the rate of ten cents per ton, also provided that in case the second party shall neglect or fail from any cause, except as thereinafter provided, to mine and remove the specified minimum he should, at the end of each year, account for and pay to the first party such portion of the royalty per ton that would then be due had the specified minimum tonnage been actually mined and removed. These provisions of the contract were followed by the following exceptions: "In case and so long as it shall be impossible to mine and remove said amount by reason of strikes, lockouts, fires, floods or any other cause beyond the control of the second party, lack of transportation facilities excepted, the said minimum shall not apply." Held:

(a)  The covenants to mine and remove a minimum tonnage and to pay a minimum royalty, were not absolute;

(b)  The clause, "or any other cause beyond the control of the second party," should not be limited by the rules *noscitur a sociis* or *ejusdem generis* to either temporary causes and disturbances interfering with the mining and removal of the coal, or to causes kindred to or of the same class as those specifically enumerated, but should be construed in its *popular acceptation so as to embrace any other cause beyond the control* of the second party not attributable to its fault.

(c)  The word "impossible," as used in said contract, does not mean absolute impossibility, but should be construed in a business sense; and the mining and removing of the minimum tonnage is "impossible" when

Coal Co v. Coal Co.

it appears that on account of causes and natural disturbances not attributable to the fault of the second party, it cannot be mined and removed without resorting to unreasonable or extraordinary expense or the employment of unusual and extraordinary means.

(d) In determining the question whether or not the second party was prevented by "causes beyond its control" from mining and removing the minimum tonnage evidence is competent which tends to show the tonnage capacity of the different mines, the physical condition of the property, the refusal of the miners to work in any of the mines and the cause thereof, the ability of the second party to mine the minimum tonnage, the condition of the unmined area, any strike in any of the mines affected by the contract, and the expense incurred or means employed in an effort to produce the minimum; and the question of impossibility of mining and removing the minimum tonnage under the saving clause of the lease in case of doubt or conflict in the evidence is one of fact to be submitted to the jury.

(e) Retention of possession by the second party without mining and removing the minimum tonnage, if impossible from causes beyond its control, is not sufficient to render it liable for the minimum royalty.

(f) The burden of proof is upon the second party to show that it was prevented from mining and removing the minimum tonnage on account of causes beyond its control.

2. PRACTICAL CONSTRUCTION PLACED UPON CONTRACT AND ACQUIESCED IN, CONSIDERED.

Evidence showing the practical construction which either party has placed upon a coal mining contract and the acquiescence therein by the other party, may be considered for the purpose of aiding in its proper construction.

[Syllabus by the court.]

ERROR to Franklin common pleas court.

**Arnold, Morton & Irvine, Q. R. Lane** and **R. J. Odell,** for plaintiff in error.

**Addison, Sinks & Babcock; Booth, Keating, Peters & Pomerene,** and **F. K. Pendleton,** for defendant in error.

ALLREAD, J.

The action in the court below was brought by the New York Coal Company against the New Pittsburgh Coal Company to recover the balance of the minimum royalty after deducting the amount of coal actually mined for the years ending June 30, 1903, 1904, 1905, and for the months of July, August and September of the year 1905, under a lease executed by the New York Coal Company in the year 1894, to Hobert Stalter, and assigned successively with the consent of the New York Coal Company to the Stalter Coal Company and the New Pittsburg Coal Company, the latter being the lessee during the period of liability. The plaintiff below recovered a verdict and judgment for the full amount claimed, to wit: $14,396.14. This judgment is sought to be reviewed by proceedings in error in this court.

### Franklin County.

It is admitted by the answer that the lessee was operating the mines covered by the lease during the period for which recovery is sought, and in a previous answer it was admitted that the lessee was in possession during the period named. It is not very material whether we accept the qualified admission of the last answer or that of the former answer. The liability must be determined by the written contract. The rental contract, by its terms, continues "until all the coal has been removed from the said aforementioned property as herein provided," and stipulates that the minimum royalty shall be in force "until all the coal in, upon or under said land has been fully and entirely removed therefrom, including all pillars supports and stumps, which shall be withdrawn and taken out."

The lessee being in possession and operating the mines during the period of alleged liability, it may be taken as conceded for the purposes of the present case that the lease was still in operation and effect. Whether the lessee might not have abandoned the premises when the coal was so far exhausted as to be incapable of practical operation is not involved in the present case. The whole contract must, therefore, be read and construed to determine the rental or royalty liability, as applied to the state of facts presented here in connection with the defense offered in the court below.

It may be noted incidentally that the lease was of the right and privilege to prospect for and mine coal, and to remove timber for mining purposes; otherwise the possession remained in the lessor. Clauses and covenants are found providing for economical operation of the coal mine so as to yield the greatest possible amount of coal, and a royalty for all coal removed, together with a minimum liability. There is a further *proviso* for an increase in the royalty according to the current rate in the Hocking Valley. The clause which is specially involved is that relating to the agreement of the lessee to pay the minimum, and the exception, which is as follows:

"And if said second party (lessee) shall neglect or fail from any cause except as hereinafter provided to so mine and remove the said minimum of thirty thousand tons between July 1, 1894, and July 1, 1895, or said minimum of sixty thousand tons during each and every year thereafter, or said minimum of thirty-five hundred tons during any month thereafter, he shall at the end of such year or month account for and pay to the first party such portion of the royalty per ton aforesaid that would then be due if said number of tons had been actually so mined and removed.

Coal Co v. Coal Co.

"It is hereby understood and agreed by and between the parties hereto that in case and so long as it shall be impossible to mine and remove said amount by reason of strikes, lockouts, fires, floods or any other cause beyond the control of the second party, lack of transportation facilities excepted, the said minimum shall not apply."

We think that this lease, so far as the royalty or rental is concerned, may be held to be a royalty contract, with a reservation of dead rent as a spur to diligence and to secure to the lessor the largest possible returns. The royalty feature of the contract is predominant. The extreme care in providing for the economical operation of the mine, the supervision and control of the lessor's engineer in mining operations, and the provision for the increase of the royalty from time to time up to the general current rate in the Hocking Valley, indicate that the central idea of the contracting parties was the payment of the tonnage royalty and the provision for dead rent was to secure the lessor against neglect or lack of diligence on the part of the lessee.

Counsel have been diligent in the citation of cases involving mining leases. These cases are by no means in harmony, but from them may be deduced a principle of construction supported at least by the weight of authorities that were a minimum royalty or dead rent is reserved without exception, the lessee is bound, except in cases where there is no minable coal or where it has become exhausted. Where merely the quantity of minable coal or the expense of mining is involved, the courts do not as a general rule relieve the lessee from his agreement as to the minimum, so that we think it may be taken here as an established proposition that if there had not been inserted an exception in favor of the lessee in the leasing contract, its liability for the minimum could not be successfully assailed.

We are, therefore, brought to a reading and construction of the exception or saving clause in favor of the lessee. The defense set forth in the answer and offered upon the trial consists of a showing that by reason of the exhaustion of the coal in the main mine upon what is known as the west hill and of the small mine upon the east part of the east hill, and by reason of the dangerous natural formation of the roof of the coal mine in the main part of the east hill, and of the refusal of the workmen to operate the east hill, the lessee was prevented from mining the minimum or a greater quantity of coal during the period of liability than was actually mined and paid for. The question, therefore, is whether this defense so stated in substance is within the saving clause of the rental contract.

Franklin County.

The learned judge of the trial court limited the clause "Or any other cause beyond the control of the second party" by the well-known principle of *noscitur a sociis* and *ejusdem generis,* and was of the opinion that the specific causes related to temporary disturbances, and that, therefore, "any other cause" must be one similar to those specifically named. The view so taken is not without plausibility, and support, but upon careful examination of the authorities in connection with the scope of this lease, we are inclined to a more liberal and broader interpretation. The doctrine of *ejusdem generis* is never an absolute rule of construction, but a mere suggestion in connection with the scope of the instrument to be interpreted. We may as fairly invoke the doctrine of *expressio unius est exclusio alterius,* and hold that the one exception excluded all others, but the central idea of the construction of a written contract is to apply all the aids and suggestions of the rules of construction toward the ascertainment of the intent of the parties which is to control. Now, having in view the main scope of this contract as heretofore expressed, the saving clause, we think, should be literally construed to effectuate the apparent intention of the parties so as to hold the lessee to a high degree of diligence, but not absolutely. The exception, therefore, "any other cause beyond the control of the second party" should be construed in its popular acceptation, and held to save the lessee as against the failure to mine the minimum for any other cause beyond his control or not arising in, or attributable to, his fault. Such construction accomplishes the manifest intention of the parties; secures a high degree of diligence; furthers the economical operation of the mines until the coal is finally exhausted; and relieves the lessee from consequences beyond his control. The view of the court is not without authority.

In the recent case of *Wilson* v. *Coal Co.* 134 Ia. 594 [112 N. W. Rep. 89], and finally decided in 119 N. W. Rep. 604, where the mining lease in controversy provided for a minimum liability, with a saving clause in case the lessees "are prevented from taking out said coal on account of any matters that they cannot avoid, then they shall not be required to take out any certain amount of coal or pay for any amount not taken out," it was held that the lessees were relieved from the minimum where, by reason of faults in the coal deposits, the mine could not be profitably operated.

Weaver, C. J., in the opinion holds:

"The saving clause of the lease, by which the lessee was to be relieved from the payment of royalty if prevented from taking out

coal on account of matters which it could not avoid, must be given a reasonable construction.''

It is true in this case there were no specific causes named, and, therefore, the doctrine of *ejusdem generis* may not be said to be involved, but the decision sustains the view that the saving clause in the lease is to be reasonably construed and applied to any condition that prevents the profitable mining of the coal.

In the case of *Givens* v. *Coal Co.* 60 S. W. Rep. 304 (Ky.), a mining lease was under consideration in which a minimum was stipulated for, with the provision excusing the minimum when the lessee was prevented therefrom ''by any accident or casualties, without fault on his part, or by accident or circumstances not under his control.'' And the saving clause was applied in favor of the lessee where the coal mined was so inferior as to make it unsalable in the market.

The case of *Robinson* v. *Kistler*, 62 W. Va. 489 [59 S. E. Rep. 505], involved a mining lease providing for a minimum royalty with an exception in favor of the lessee ''in case of strikes, accidents or any cause of stoppage of transportation over which the second party (lessee) has no control, and he is disabled or prohibited thereby from mining or shipping coal from the said mine, then the minimum royalty as above specified is to be suspended for the period of such disability;'' and this exception was construed to include lack of cars.

The opinion, however, sheds light upon the construction of the general words ''any cause beyond control,'' etc., in which is found the following:

''The words of a contract will be given a reasonable construction, if possible, rather than an unreasonable one. * * * These words, 'over which the second party has no control,' are simply another way we have of saying, almost every day in making contracts, 'for which the second party is not to blame,' or 'without the fault of the party of the second part.' The word 'control' has no legal or technical meaning distinct from that given in its popular acceptation.''

In the case of *Bannan* v. *Graeff*, 186 Pa. St. 648 [40 Atl. Rep. 805], where the mining lease provided for a minimum to be mined and paid for by the lessee, ''unless prevented from doing so by an unavoidable accident or occurrence beyond their control,'' it was held that the exhaustion of the coal or other physical conditions so that the available or workable coal was exhausted, relieved the lessee.

A number of cases are cited by counsel for defendant in error, but in all the cases cited, save one, there was an absolute stipulation

for the minimum, and no saving clause in favor of the lessee, the only exception being the case of *Berwind-White Coal Min. Co.* v. *Martin*, 124 Fed. Rep. 313 [60 C. C. A. 27], decided by the circuit court of appeals, and in which a writ of review was denied by the Supreme Court of the United States, *Berwind-White Coal Min. Co.* v. *Martin*, 191 U. S. 569 [24 Sup. Ct. Rep. 841; 48 L. Ed. 306]. The only report of the case is, therefore, found in the circuit court of appeals.

The majority opinion in this case refers to the minimum clause in the contract in connection with the statement that the mining operation had been abandoned during the first year, and holds the lessee liable for the minimum during the years stipulated for in the lease. No grounds of abandonment are stated in the prevailing opinion. So far as that opinion is concerned, the lessees appeared to have abandoned the lease without any cause and expected to defeat the royalty upon the ground that all the coal was still in place in the mine. This defense was not sustained, and the minimum liability was enforced.

In the dissenting opinion, however, the saving clause is set out and relied upon to support the dissent. In the statement of facts found in the dissenting opinion, it appears that the lessees, after mining some coal the first year and prospecting in the vein and finding troubles and faults which indicated to them that the mine was not profitable, abandoned the lease. The lessors thereupon took possession, and about the end of the first year, after exploring the veins, found the existence of profitable coal, and so notified the lessees, insisting upon their complying with their lease. The statement of facts even in the dissenting opinion does not bring the case within the exception for the reason that ample minable coal existed in the lease, but the lessees had not gone to the trouble of sufficiently exploring the vein so as to discover it. The failure, therefore, to mine was due, in some measure, to the fault of the lessees.

While the authority of a decision of the Supreme Court of the United States would be sufficient to override the cases heretofore cited, still it does not sufficiently appear that the Supreme Court of the United States or even the circuit court of appeals passed upon a case where the controlling facts are similar to the case at bar.

Another feature of this case which adds to the preponderance in favor of the construction given is that it accords with that of the parties during the period for which the action is brought. The operation of the mines was under the direction in a measure of the engineer of the lessor and it does not appear that he ever objected to the manner

Coal Co v. Coal Co.

in which the mines were worked or that the company ever made any claim during that period to the enforcement of the minimum clause. While the course of the lessor cannot be said to be an estoppel, yet it operates favorably to the lessee in the construction of the lease.

It is urged that the lessee, being in possession and relieved from the minimum, might hold possession for an indefinite time, and use the property in connection with other mining properties and prevent the lessor from operating it. This argument would be most persuasive if the court were making a new contract, but it is a sufficient reply to say that we are only construing reasonably and in harmony with the intention of the parties a contract already made.

We are, therefore, of the opinion that the defendant below should have been permitted to show the tonnage capacity of the mines in the west hill and in the east part of the east hill, if any were still being operated, during the period named, when operated by the most efficient machinery in general use or that approved by the engineer in charge and when operated up to the full capacity, both as to machinery and available men, and to show the physical condition of the mines in the east hill, the objection of the workmen to operating therein, and the ability of the lessees to mine coal therefrom, as well as the prospect in the unmined area, as affecting the possibility of putting out the minimum provided for in the lease. Also it was proper to show, as reflecting to that extent, any general strike, in all the mines affected by this contract. Assuming that the defendant could produce the testimony proposed in its defense, we think it is a question for the jury to decide as to the impossibility of mining the minimum amount arising from any cause beyond the control of the lessee.

The word "impossible" as used in the contract must be construed in a business sense, and would relieve the lessee from the minimum where, by reason of causes beyond his control, the minimum could not be mined without resorting to unreasonable or extraordinary expense, or the employment of unusual and extraordinary means.

For the refusal of the trial court to admit the evidence of the character stated proposed by the defendant below in its defense, the judgment is reversed.

The defendant in the court below objected to the ruling of the trial court upon the burden of proof as to the exception or saving clause. In the amended petition the plaintiff negatived the conditions required by the exception or saving clause. This was put in issue by the general

denial. The form of the pleading, however, is not controlling. In the case of the *Scioto Fire Brick Co.* v. *Pond,* 38 Ohio St. 65, and *Cook* v. *Andrews,* 36 Ohio St. 174, 178, it was held that the burden was upon the defendant to prove the exception. It is contended, however, that the facts here are different, inasmuch as the lessor had inspectors and engineers in charge of the work. We think, however, that the provisions of this lease in that respect do not call for a contrary decision. While the lessor had engineers supervising the work, yet the lessee was bound under the contract to explore for coal in the unmined area. He, therefore, had the means of knowing whether minable coal could be found, and to shift the burden of proof to the plaintiff would require it not only to be familiar with the workings of the coal mine where in operation, but to explore in the unmined sections. Williams, J., in the case of *Moody* v. *Insurance Co.* 52 Ohio St. 12 [38 N. E. Rep. 1011; 26 L. R. A. 313; 49 Am. St. Rep. 699], amply sustains the ruling of the trial court as to burden of proof, and this is not affected by *Germania Fire Ins. Co.* v. *Werner,* 76 Ohio St. 543 [81 N. E. Rep. 980; 12 L. R. A. (N. S.) 456; 118 Am. St. Rep. 891]. There was, therefore, no error prejudicial to the defendant below in the rulings of the court, up to the opening of the defendant's case.

The judgment will, therefore, be reversed for the reasons stated in the opinion, and the cause remanded for a new trial.

**Sullivan** and **Dustin, JJ.,** concur.