## Continental Casualty Company v. Mrs. Bertha Deeg.

### Decided January 26, 1910.

#### 1.—Accident Insurance—Voluntary Exposure to Danger.

An accident insurance policy contained a stipulation that where the accidental injury resulted from "voluntary exposure to unnecessary danger or obvious risk of injury," the amount payable should be one-fourth of the amount which otherwise would be payable; in an action upon the policy the evidence showed that the assured was an experienced railroad employee in active service on and about railway trains; that on the occasion of his death he was a passenger on a railway train which was nearing a station and was moving at about six miles an hour when he opened the trap door of a vestibuled coach, and as he started down the steps of the coach his feet seemed to slip and he fell 'off the train and was killed. Held, a peremptory instruction for the defendant was properly refused because (1) the evidence did not show that the deceased was killed while in the act of alighting from a moving train; and (2) if it did, it would not follow as matter of law that the deceased voluntarily exposed himself to danger. Whether or not there was obvious risk of injury to the deceased under all the circumstances, was a question of fact for the jury.

#### 2.—Same.

By the expression "voluntary exposure to unnecessary danger or obvious risk of injury" as used in a policy of accident insurance, is meant that the danger must be one so logically attending the act that the assured must be conscious of it.

#### 3.—Same—Charge.

The expression "unnecessary exposure to danger" has not the same meaning as 'voluntary exposure to unnecessary danger."

#### 4.—Trial—Improper Argument—Practice.

Although not controlling in every case, it is the rule that when the trial court instructs the jury to disregard an improper argument and the counsel making the argument withdraws the same and asks the jury not to consider it, the argument is not sufficient cause for reversing the judgment.

Appeal from the District Court of Bexar County. Tried below before Hon. J. L. Camp.

*Manton Maverick* and *Onion & Henry,* for appellant.—The court erred in not granting a new trial because of its refusal to give a peremptory instruction to return a verdict for the defendant, for the reason that there was no evidence adduced in the case which tended to show any liability on the part of the defendant, the undisputed, uncontroverted evidence being that the accidental injury to deceased resulted from voluntary exposure to unnecessary danger and that the risk of injury was obvious to deceased at the time he alighted or attempted to alight from the moving train. Shevlin v. American Mut. Acc. Assn., 36 L. R. A., 54; Carpenter v. American Accident Co., 24 S. E., 502; Tuttle v. Travelers' Ins. Co., 134 Mass., 176; Keene v. New England Mut. Acc. Assn., 164 Mass., 170; Travelers' Ins. Co. v. Randolph, 78 Fed., 762; Follis v. United States Mut. Acc. Assn., 62 N. W., 809; Maryland Casualty Co. v. Hudgins, 97 Texas, 124; 1 Am. & Eng. Enc. Law, 2d ed., p. 307; Continental

Casualty Co. v. Wade, 101 Texas, 102; Diddle v. Continental Casualty Co., 63 S. E., 962.

In the case of Telephone Co. v. Burgess, 60 S. W., 1023, it is said it is no reflection upon the integrity or the intelligence of a jury to hold that they may have been influenced by improper argument of counsel even when they are told by the court to disregard such argument because the human mind is often unconsciously controlled by influences which it has striven to combat and which it believes it has overcome. In recognition of this fact the law throws around a jury every safeguard to keep their minds free from every impression except such as is produced by the legal evidence admitted in the case, and a disregard of these safeguards in the trial of a case, makes it the duty of an Appellate Court to set aside the verdict of the jury in all cases in which it is probable that such irregularity has been injurious to the party complaining of it. Galveston, H. & S. A. Ry. Co. v. Washington, 42 Texas Civ. App., 380.

"We can not say that the jury were not influenced by these remarks to the prejudice of appellant. They were calculated to influence the jury to consider improper matters in arriving at their verdict; and it must be held that they were so intended by counsel, that being the purpose of the remarks and having been made over the objection of the appellant." Gulf, C. & S. F. Ry. Co. v. McClerran, 91 S. W., 654; Galveston, H. & S. A. Ry. Co. v. Washington, 42 Texas Civ. App., 380; Western U. Tel. Co. v. Smith, 52 Texas Civ. App., 107; San Antonio Traction Co. v. Lambkin, 99 S. W., 574; Western U. Tel. Co. v. Burgess, 60 S. W., 1023; Ft. Worth & D. C. Ry. Co. v. Hays, 51 Texas Civ. App., 114; Texas & N. O. Ry. Co. v. Harrington, 44 Texas Civ. App., 386; Missouri, K. & T. Ry. Co. v. Wood, 91 S. W., 803.

*Bertrand & Arnold* and *Joel A. Lipscomb,* for appellee.

JAMES, CHIEF JUSTICE.—This is an action on an accident insurance policy. The policy provided among other things: "In any of the losses covered by this policy and specified in parts 1 or 11, where the accidental injury results from voluntary exposure to unnecessary danger, or obvious risk of injury, . . . the amount payable shall be one-fourth of the amount which otherwise would be payable under this policy," etc. There was a verdict for the entire amount provided in case of death.

Felix Deeg, the insured, was run over and killed by a train. There was evidence to show that he was an employe of the railway company, but at the time of this occurrence he was not engaged in his work, but was returning home on the train as a passenger. Before the train had reached the station where it was to stop, and while it was rounding a curve and going at the rate of about six miles per hour, approaching the station, Deeg, evidently meaning to get off the train at or about that point, went with his valise to the platform, which was vestibuled, raised the trap door, stepped down, shoved the door back, when he in some way fell, with the result that his body went under the wheels of the train and he was killed.

The witness Cavender testified: "I saw the man through the window coming around, and then he came and opened the trap door, and he had a valise across his shoulder with a strap across his shoulder, and as he came down about middle ways of the steps and something, I don't know if something caught him or what it was snatched him back and his feet slipped off from under him (indicating) and he fell. . . . He did not get down to the last step; he didn't swing off. Something seemed to catch him. I don't know what made him fall, if the handle, the brake handle, or catch or what caught the valise, the strap or something yanked him back and his feet kinder slipped out from under him. He was not on the last step when this occurred. He lifted up the trap door and stepped down, and after he lifted up the door, shoved the door back and he slipped. I guess something snatched him back under the car. His valise might have snatched him back when he slipped, but I didn't see it in that particular. I don't know whether the strap of that valise was broken, but the valise was off him and was open after he fell and away from the train. No, sir, I didn't see him make any attempt to get off."

Mrs. Braehmer, who was also there, stated: "As the train was coming in, going to the depot, this party steps on the platform and I think he stepped on to the second step and it seemed like his feet slipped and he got tangled up some way. He tried to balance himself and in some way he must have got tripped in his valise—he had a grip—a valise in his hand when he was coming out to get off. No, I don't think he had gotten down to the last step; he was very near on the second step. His feet slipped, or something, as far as I could see. He did not get down to the last step and swing off."

Tomas Perez stated what he saw: "The train makes a bend right there. He was getting out towards the Austin Street side. He was out on the side away from the bend. That would thrown him away from the train. He ran a little distance, the suction of the train seemed to pull him under, something must have pulled him under the train. If left alone, he would not have gotten under there. Something unusual that caused him to get under the wheels, and under any general, usual circumstances he would not have done so."

Dunham, who had ten years' service in railroading, stated that the end of the steps of a vestibuled passenger coach is about twenty-six inches from the ground, that this was within an inch or two of it, and the same distance from the rail; and "that the suction of the train wouldn't amount to anything, not a thing, wouldn't be considered by a railroad man a minute in going that fast. It would probably be sufficient to suck under a hat, but not a grip."

The evidence showed that deceased, while in the service as a fireman, had often been seen to get off the engine at about the same place.

With this testimony in the record it would have been error to give for defendant the peremptory instruction, the refusal of which is what is complained of by the first assignment. What is meant by the provision quoted in the beginning of this opinion, is fully and satisfactorily explained, with the authorities relating thereto in the recent case of Whalen v. Peerless Casualty Co., 73 Atl., 642. Certainly, if Deeg had not swung off or alighted from the train, the act

of swinging off or alighting was not involved. The testimony above quoted coming from the persons who appear to have been in a position to witness the event, if accepted by the jury, shows that Deeg from some accidental cause lost his balance before he could be said to have undertaken the act of getting off, and that this, an accident pure and simple, was what led to his death, and not any danger that lurked in the act of getting off the moving train, because such act had not been reached.

And if it had been reached and he had met his death as a result, it would not follow, as a matter of law, that he *voluntarily* exposed himself to such danger. In order for this to be, the danger must have been one so logically attending the act, that he must have been conscious of it. A train may be going so slow that no one would imagine danger in getting off, and on the other hand, it may be going so fast that everyone would realize the presence of danger in the act. This train was nearing the station and was going at what seems to have been a low rate of speed; the deceased was an experienced railroad employe, in active service on and about trains, and whether or not to such a person there was danger at all in his getting off this train at that time and place, and the train going at that speed, would have been a question proper to submit to the jury; and for better reason, the question whether or not he was conscious of the danger of what happened, for unless it was sufficiently probable to present itself to him he could not be said to have voluntarily exposed himself to it.

But this discussion is unnecessary as the jury had evidence before them to warrant them in finding that he did not step off the train at all, but by some accidental means lost his balance while on the second step of the platform and slipped from the train by reason of that cause; they could have found that from this cause, an unforeseen and casual one and not from a "voluntary exposure to danger or obvious risk of injury" which can apply only to known or obvious dangers, the man met his death. The court correctly refused to give a peremptory instruction.

The second assignment complains of the refusal of this charge: "You are further instructed that if you believe from the evidence that the deceased, Felix Deeg, while a passenger upon the G., H. & S. A. Ry. Co. on the morning of September 2, 1906, while said train was entering San Antonio, raised a trap door or platform and opened the vestibule door and started down the steps of the car for the purpose of alighting therefrom; and you further believe that while so doing he fell and was killed thereby; and you further believe that such act on his part was unnecessary exposure to danger, or that the risk of injury was obvious, then your verdict should be for the defendant."

This charge was properly refused. Defendant would not have been entitled to a verdict simply if his act was found to be an unnecessary exposure to danger. This was not the contract. The provision for nonliability, or rather for reduced liability, was a voluntary exposure to unnecessary danger. The word voluntary is important and was intended for something. To use language from the case above

quoted: "It appears therefore that a voluntary exposure to unnecessary danger or obvious risk within the meaning of the policy, is a conscious or intentional exposure to a known risk, and not a mere inadvertent or accidental one." To have given the charge asked might have led the jury to find for defendant because he was upon the platform step when he fell, with more reference to the position he occupied than to what caused him to fall. In Travelers' Ins. Co. v. Randolph, 78 Fed., 754, it was held that riding upon the platform of a car running sixteen miles an hour is not, as a matter of law, voluntary exposure to an unnecessary danger within the meaning of an insurance policy. It would seem to us, however, that when a man chooses to occupy such a position on a rapidly moving train, the dangers that are incident to and evident in such a situation, such as arise from movements of the train attending its operation, would be unnecessary dangers voluntarily assumed. But be this as it may, dangers not to be expected from occupying such a position, a person can not be said to voluntarily expose himself to. There was nothing to suggest to Deeg that he might get caught or tangled while on the step in such manner as to throw him down, though it was unnecessary for him to be on the step at that time, and it was an unnecessary exposure. The charge was calculated to cause the jury to ignore the essential feature that he consciously or voluntarily exposed himself to the particular danger which overtook him.

The court in the main charge stated: "If you find from the evidence that Felix Deeg's death resulted from an accidental injury received by him . . . and you further find that his death did not result from a voluntary exposure to unnecessary danger nor result from an obvious risk of injury to himself, then you are instructed to return a verdict for plaintiff against defendant company for the full amount sued for less $30 due on the premium for said policy."

The fourth assignment of error complains of the giving a special charge asked by plaintiff which appellant claims to have been a repetition of the above. There is a difference in the two instructions, in that the above paragraph in the main charge deals with the case generally, while the requested one has reference to the theory of Deeg being killed while attempting to alight from the steps. But there was in the main charge another paragraph charging the jury to find for defendant upon the theory of his being killed while in the act of alighting. The special instruction complained of presented the same theory conversely for plaintiff. We think no error was committed in this matter.

The seventh assignment claims that the undisputed evidence shows that in attempting to get off a moving train Deeg subjected himself to unnecessary danger and obvious risk of injury within the meaning of the policy. We overrule this and for reasons refer to the discussion already made.

We overrule the fifth and sixth assignments of error which complain of improper argument by plaintiff's counsel. The remarks were: "The Continental Casualty Company has tendered into open court one-fourth of the policy of insurance sued on, less the sum of thirty dollars due on the premium, and the purpose of this tender is to

make the poor widow pay the costs of court." Also this: "The Continental Casualty Company never pays its policies without suit. The law books of the country are full of cases against the Continental Casualty Company." These utterances were objected to on each occasion and the objections sustained, and the bills show that the court thereupon instructed the jury not to consider same, and counsel stated to the jury that he withdrew them and asked them not to consider same. It is true, as stated by appellee, that neither of the bills states the objection that was made to said remarks, but from what is set forth in them the objection is fairly indicated and could have been no other than that the language was improper argument. We do not overrule the assignments on this ground. On examining the evidence, as we have had to do, it seems to us that it preponderates in favor of the verdict rendered, and we think it fairly appears that the jury were governed by the evidence and not by said remarks. McLane v. Paschal, 74 Texas, 27. Besides, we have here the feature that the judge admonished the jury to not consider the remarks and that counsel withdrew same, and we have held in similar situations that it might be presumed that the jury heeded the court's instruction. International & G. N. Ry. v. Aleman, 52 Texas Civ. App., 565. While this may not be the rule to apply in every case, we think the objectionable argument should not require the present judgment to be set aside. Affirmed.

*Affirmed.*

Writ of error refused.